**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| JOHN BRADLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:13-cv-12927-RGS |
| v. | ) | |
| | ) | |
| TIMOTHY J. CRUZ, MICHAEL HORAN, | ) | **ORAL ARGUMENT REQUESTED** |
| FRANK J. MIDDLETON, and OFFICE | ) | |
| OF THE DISTRICT ATTORNEY FOR | ) | |
| PLYMOUTH COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS TIMOTHY J. CRUZ'S AND THE
OFFICE OF THE DISTRICT ATTORNEY FOR PLYMOUTH COUNTY'S PARTIAL
MOTION TO DISMISS COUNT III OF THE COMPLAINT (AGAINST DEFENDANT
CRUZ) AND COUNT IV OF THE COMPLAINT IN ITS ENTIRETY**

MARTHA COAKLEY
ATTORNEY GENERAL

Bret A. Cohen, BBO # 637830
Special Assistant Attorney General
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
Tel.  (617) 542-6000
Fax (617) 542-2241
bcohen@mintz.com

Dated:  April 4, 2014

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ALLEGED FACTS.................................................................................................................... 2

ARGUMENT............................................................................................................................. 3

I.   LEGAL STANDARD ................................................................................................. 3

II.   THE COMPLAINT FAILS AS A MATTER OF LAW TO ALLEGE A BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING. ...................... 4

A.   Mr. Bradley Was An At Will Employee Of The District Attorney's Office, Terminable For Any Reason Or No Reason. ........................................................4

B.   The Implied Covenant Of Good Faith And Fair Dealing, Under *Fortune*, Is A Narrow Exception To The At Will Rule Of Employment. ...........................5

C.   Mr. Bradley's Allegations Cannot Support A Claim That The District Attorney's Office Deprived Him Of Compensation Already Substantially Earned. ...............................................................................................................6

1.   Mr. Bradley Had Not Yet Earned 20-Year Full Pension Vesting Benefits When His Employment With The District Attorney's Office Ended Because He Had Not Yet Accrued 20 Years Of Service.......................6

2.   Mr. Bradley Had No Legitimate Interest In 20-Year Full Pension Vesting Benefits Because He Had Not Even Substantially Earned Such Benefits When His Employment With The District Attorney's Office Ended At Least Eight Months Before His 20-Year Anniversary As An Assistant District Attorney.................................................................................8

D.   Mr. Bradley's Talismanic Pleading That The District Attorney's Office Terminated His Employment In Bad Faith Cannot Forestall Dismissal Of His Claim For Breach Of The Covenant Of Good Faith And Fair Dealing. ...........9

III.   THE COMPLAINT FAILS AS A MATTER OF LAW TO ALLEGE A CLAIM AGAINST MR. CRUZ FOR TORTIOUS INTERFERENCE WITH ADVANTAGEOUS CONTRACTUAL, BUSINESS, OR EMPLOYMENT RELATIONSHIP........................ 12

CONCLUSION........................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................4, 11

*Bennett v. Saint-Gobain Corp.*,
507 F.3d 23 (1st Cir. 2007)...............................................................................................12

*Buscaglia v. Fiddler*,
157 F.2d 579 (1st Cir. 1946)...............................................................................................2

*Cochran v. Quest Software, Inc.*,
328 F.3d 1 (1st Cir. 2003)...................................................................................................6

*Fiorillo v. May Dep't Stores Co.*,
No. 97-198A, 2000 Mass. Super. LEXIS 123 (Mass. Super. Ct. Feb. 14, 2000)............7, 9, 11

*Fortune v. Nat'l Cash Register Co.*,
373 Mass. 96 (1977) ................................................................................. passim

*Harrison v. Netcentric Corp.*,
433 Mass. 465 (2001) ...............................................................................................5, 7, 12

*In re: Int'l Gospel Party Boosting Jesus Grps., Inc.*,
464 B.R. 78 (Bankr. D. Mass. 2012) ..................................................................................2

*King v. Driscoll*,
424 Mass. 1 (1996) ..............................................................................................................9

*Maddaloni v. Western Mass. Bus Lines, Inc.*,
386 Mass. 877 (1982) ......................................................................................................5, 6

*Michelson v. Digital Fin. Servs.*,
167 F.3d 715 (1999)............................................................................................................5

*Morales-Tanon v. Puerto Rico Elec. Power Auth.*,
524 F.3d 15 (1st Cir. 2008).........................................................................................4, 10

*Mullen v. Ludlow Hosp. Society*,
32 Mass. App. Ct. 968 (1992)............................................................................................7

*O'Donnell v. Boggs*,
611 F.3d 50 (1st Cir. 2010)...............................................................................................12

*Pierce v. Cotuit Fire Dist.*,
    741 F.3d 295 (1st Cir. 2014) ................................................................................12

*Rodio v. R.J. Reynolds Tobacco Co.*,
    416 F. Supp. 2d 224 (D. Mass. 2006) ...........................................................5, 7, 8

*Scalli v. Citizens Fin. Grp., Inc.*,
    No. 03-12413-DPW, 2006 U.S. Dist. LEXIS 7717 (D. Mass. Feb. 28, 2006) ........................10

*Shen v. Biogen Idec Inc.*,
    523 F. Supp. 2d 48 (D. Mass. 2007) ............................................................8, 11

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
    360 F.3d 220 (1st Cir. 2004) .................................................................2, 4, 11

*Wilson v. HSBC Mortgage Servs., Inc.*,
    No. 13-1298, 2014 U.S. App. LEXIS 2798 (1st Cir. Feb. 14, 2014) ........................................2

*Wong v. Resolve Tech.*,
    No. 10-11642-DJC, 2011 U.S. Dist. LEXIS 80733 (D. Mass. July 25, 2011) ................5, 8, 11

*Wright v. Shriners Hosp. for Crippled Children*,
    412 Mass. 469 (1992) ..........................................................................................4

**STATUTES**

G.L. ch. 12, § 12 .....................................................................................................13

G.L. ch. 12, § 16 ..................................................................................................4, 13

G.L. ch. 32, § 3(2)(g) ..............................................................................................7

G.L. ch. 32, § 10(2)(b) .........................................................................................7, 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)....................................................................................1, 2, 3

Defendants Timothy J. Cruz ("Mr. Cruz") and the Office of the District Attorney for

Plymouth County (the "District Attorney's Office") (together, "Defendants") respectfully submit

this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to

dismiss Count III (as to Mr. Cruz only) and Count IV (in its entirety) of Plaintiff John Bradley's

("Mr. Bradley") Complaint and Jury Demand (the "Complaint").

## PRELIMINARY STATEMENT

The relationship between Mr. Bradley and the District Attorney's Office was already

strained when, at least eight months before Mr. Bradley contends that his pension benefit was to

fully vest, the District Attorney's Office terminated his employment.  On these allegations alone,

and despite the at will nature of his employment, Mr. Bradley contends in Count IV of his

Complaint that the District Attorney's Office breached the covenant of good faith and fair

dealing and owes him the benefits of a fully vested pension.  Mr. Bradley also contends in Count

III of his Complaint that Mr. Cruz tortiously interfered with his employment relationship with

the District Attorney's Office.  The Defendants deny entirely Mr. Bradley's allegations.

That said, the allegations themselves belie Mr. Bradley's claim for breach of the covenant

of good faith and fair dealing and warrant dismissal under Fed. R. Civ. P. 12(b)(6).  Mr.

Bradley's pension vested over time with full vesting contingent upon his reaching 20 years of

service to the District Attorney's Office, and he was nowhere near meeting that 20-year

threshold when his employment ended.  Mr. Bradley has not and cannot plead sufficient facts to

show that he had a legitimate expectation of receiving full pension vesting benefits or that the

District Attorney's Office terminated his employment in a bad faith attempt to deprive him of

compensation for his past services.

Nor does Mr. Bradley plead a viable claim for tortious interference with contract against Mr. Cruz, as whatever employment agreement he had was with Mr. Cruz himself, and Mr. Cruz cannot interfere with his own contracts.

### ALLEGED FACTS[1/]

1.      In October 1991, Mr. Bradley began working as an Assistant District Attorney for the District Attorney's Office.[2/]  (Comp., ¶ 7.)

2.      In October 2001, ten years later, Mr. Bradley left the District Attorney's Office to serve as an Assistant United States Attorney.  (Comp., ¶ 8.)

3.      In April 2003, Mr. Bradley rejoined the District Attorney's Office as the Deputy First Assistant District Attorney.  (*Id.*)

4.      On November 17, 2011, during a meeting between Mr. Bradley and Mr. Cruz, Mr. Cruz expressed anger with Mr. Bradley involving himself in public policy matters, forbade him from talking further with the press, and demanded to know when Mr. Bradley intended to resign.  (Comp., ¶¶ 40, 41.)

---

[1/]      For purposes of this partial motion, only the salient allegations are recited herein.  As required on a motion pursuant to Fed. R. Civ. P. 12(b)(6), such facts alleged in the Complaint are accepted as true solely for the purposes of this motion.  *See United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 224 (1st Cir. 2004).

[2/]      This Court need not, and indeed should not, accept the truth of Mr. Bradley's allegations at face value where clearly contradictory facts exist in the public record.  *See Wilson v. HSBC Mortgage Servs., Inc.*, No. 13-1298, 2014 U.S. App. LEXIS 2798, at *10 (1st Cir. Feb. 14, 2014) (court need not "take every single allegation at face value" on Rule 12(b)(6) motion where alleged "facts" are contradicted by facts in public record or otherwise susceptible to judicial notice).  Massachusetts Board of Bar Overseers records reflect that Mr. Bradley was not admitted to the Massachusetts bar until June 18, 1992, as documented by the Massachusetts Board of Bar Overseers Web Database Attorney Status Report for John E. Bradley, Jr., which is attached to the Affidavit of Bret A. Cohen as Exhibit 1.  The Court may take judicial notice of this fact.  *See Buscaglia v. Fiddler*, 157 F.2d 579, 582 (1st Cir. 1946) (taking judicial notice of date taxpayer was admitted to bar); *In re: Int'l Gospel Party Boosting Jesus Grps., Inc.*, 464 B.R. 78, 84 n.7 (Bankr. D. Mass. 2012) (taking judicial notice of records of the Massachusetts Board of Bar Overseers).  Accordingly, Mr. Bradley did not become an assistant district attorney and begin for purposes of the state pension system until June 1992, approximately *eight months* later than he alleged in the Complaint.  (*See* Comp., ¶ 7.)

5.       In response, Mr. Bradley stressed that he wanted to continue working for the

District Attorney's Office until he reached his 20-year anniversary in April 2013, thereby

allowing him to fully vest in the pension plan.  (Comp., ¶ 42.)

6.       On September 28, 2012, the District Attorney's Office terminated Mr. Bradley's

employment, "eight months shy of reaching his twenty-year pension vesting date."  (Comp., ¶¶

45, 46.)

## ARGUMENT

Mr. Bradley's claim that the District Attorney's Office breached the implied covenant of

good faith and fair dealing by terminating his employment at least eight months before his

pension benefits could fully vest must fail for two reasons.  First, when Mr. Bradley's at will

employment terminated, he had not already substantially earned, and the District Attorney's

Office did not deprive him of, a fully vested pension benefit.  Second, Mr. Bradley's allegations

fail to raise an inference of bad faith on the part of the District Attorney's Office.

Mr. Bradley's claim against Mr. Cruz for tortious interference with contractual or

business relations likewise must fail because Mr. Bradley served at the pleasure of Mr. Cruz, and

Mr. Cruz could not as a matter of law "interfere" with an employment contract to which he was a

party.

## I.       LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  While, under this "plausibility standard," a "complaint . . . does not need

detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Morales-Tanon v. Puerto Rico Elec. Power Auth.*, 524 F.3d 15, 18

(1st Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56); *see also United States ex rel. Karvelas v.*

*Melrose-Wakefield Hosp.*, 360 F.3d 220, 224 (1st Cir. 2004) (quoting *Arruda v. Sears, Roebuck*

*& Co.*, 310 F.3d 13, 18 (1st Cir. 2002)) ("claims . . . made in the complaint [are to be rejected] if

they are 'bald assertions' or 'unsupportable conclusions'").

As the Supreme Court instructs in *Twombly*, "Factual allegations must be enough to raise

a right to relief above the speculative level," while allegations setting forth claims that are merely

"conceivable" are insufficient. 550 U.S. at 555, 570; *see Morales-Tanon*, 524 F.3d at 18 ("A

plaintiff's complaint must itself frame a viable claim.").

## II. THE COMPLAINT FAILS AS A MATTER OF LAW TO ALLEGE A BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

Mr. Bradley's self-styled "*Fortune* Claim" (Count IV) must fail on the pleadings because

Mr. Bradley alleged no compensation for past services that he would be entitled to recover under

a theory of breach of the implied covenant of good faith and fair dealing. And, even if Mr.

Bradley alleged such damages (which he has not), he failed to plead any facts to show that the

District Attorney's Office terminated his employment to deprive him of his due compensation.

### A. Mr. Bradley Was An At Will Employee Of The District Attorney's Office, Terminable For Any Reason Or No Reason.

Per statute, during his employment with the District Attorney's Office, Mr. Bradley

served at the pleasure of the District Attorney. G.L. ch. 12, § 16 ("Each district attorney . . .

may, at his pleasure, remove such assistant district attorneys as are necessary to the functioning

of the office of the district attorney."). Mr. Bradley was, therefore, an at will employee,

terminable with or without just or good cause. *See Wright v. Shriners Hosp. for Crippled*

*Children*, 412 Mass. 469, 472 (1992) (at will employees may be discharged "for almost any reason or for no reason at all").

      **B.**      **The Implied Covenant Of Good Faith And Fair Dealing, Under *Fortune*, Is A Narrow Exception To The At Will Rule Of Employment**.

"The implied covenant of good faith and fair dealing is implicit in all Massachusetts contracts, including contracts for employment at will." *Rodio v. R.J. Reynolds Tobacco Co.*, 416 F. Supp. 2d 224, 233 (D. Mass. 2006) (quoting *Harrison v. Netcentric Corp.*, 433 Mass. 465, 473 (2001)). Thus, despite the general rule that at will employment agreements may be terminated by either party for any reason or no reason at all, under this narrow exception to the at will rule, courts will hold an employer "accountable to a discharged employee for unpaid compensation if the employee were terminated in bad faith and the compensation is clearly connected to work already performed." *Harrison*, 433 Mass. at 473 (explaining doctrine established by *Fortune v. Nat'l Cash Register Co.*, 373 Mass. 96 (1977), and its progeny); *see also Michelson v. Digital Fin. Servs.*, 167 F.3d 715, 726 (1999) (employer breaches covenant of good faith and fair dealing when it terminates an at will employee for the purpose of depriving the employee of compensation already earned but not yet payable).

So, to recover for a breach of the implied covenant of good faith and fair dealing under the *Fortune* doctrine, a party must allege "conduct taken in bad faith . . . to deprive a party of the fruits of labor already substantially earned." *Rodio*, 416 F. Supp. 2d at 233 (quoting *Christensen v. Kingston Sch. Comm.*, 360 F. Supp. 2d 212, 226 (D. Mass. 2005)); *see also Maddaloni v. Western Mass. Bus Lines, Inc.*, 386 Mass. 877, 884 (1982) (employee must plead that employer deprived "the employee of money that he had fairly earned and legitimately expected"). In the typical case, a breach is found where "the plaintiff is discharged on the eve of receiving a large bonus or commission for services rendered." *Wong v. Resolve Tech.*, No. 10-11642-DJC, 2011

U.S. Dist. LEXIS 80733, at *21 (D. Mass. July 25, 2011)[3/] (quoting *Shen v. Biogen Idec Inc.*,

523 F. Supp. 2d 48, 54 (D. Mass. 2007)); *see, e.g.*, *Maddaloni*, 386 Mass. at 882 (finding

employee was discharged after his commission became payable, but before it was actually paid);

*Fortune*, 373 Mass. at 105 (finding employer terminated employee after 25 years of service one

business day after employee obtained a $5 million order on which employer would have had to

pay bonus).

The *Fortune* doctrine, however, stops short of granting an at will employee the right to

continue working in order to earn a commission, bonus, or other compensation that he had not

already earned. *See Cochran v. Quest Software, Inc.*, 328 F.3d 1, 10 n.3 (1st Cir. 2003) (holding

employee had no right to keep working so his stock options could vest).

**C.      Mr. Bradley's Allegations Cannot Support A Claim That The District
Attorney's Office Deprived Him Of Compensation Already Substantially
Earned**.

Mr. Bradley's allegations fall woefully short of establishing the requisite damages for a

claim against the District Attorney's Office for breach of the implied covenant of good faith and

fair dealing because, based on the facts alleged, he had not already earned a full vested pension,

nor did he have any legitimate expectation of doing so when the District Attorney's Office

terminated his employment.

> *1.   Mr. Bradley Had Not Yet Earned 20-Year Full Pension Vesting Benefits When
> His Employment With The District Attorney's Office Ended Because He Had
> Not Yet Accrued 20 Years Of Service.*

To begin, Mr. Bradley's allegations, even if taken as true, do not establish that he already

had earned "full pension vesting benefits" on the date of his termination. Mr. Bradley's pension

vested over time, and—as alleged in the Complaint (¶¶ 42, 67)—full pension vesting was

---

[3/]      All unreported cases cited herein are attached in alphabetical order as Exhibit A.

contingent upon completion of 20 years of creditable service. Mr. Bradley never met this threshold, and, therefore, was and is not entitled to such payment.

Indeed, the implied covenant of good faith and fair dealing "does not protect interests contingent on an event that has not occurred." *Rodio*, 416 F. Supp. 2d at 235 (citing *Harrison*, 433 Mass. at 475) (no breach of covenant of good faith and fair dealing where plaintiff was terminated before reaching 40 years of service and claimed he was discharged "at a time when he was on the brink of harvesting a life's labor"). "Such speculative interests are neither clearly identifiable nor clearly related to an employee's past service," *Harrison*, 433 Mass. at 475 (internal quotations and citations omitted), and, therefore, cannot form the basis for a claim for breach of the implied covenant of good faith and fair dealing.

Pension benefits, in particular, are speculative in nature when the employee may earn them only through continued employment. *See Fiorillo v. May Dep't Stores Co.*, No. 97-198A, 2000 Mass. Super. LEXIS 123, at *10 (Mass. Super. Ct. Feb. 14, 2000) (citing *Gram v. Liberty Mutual Ins. Co.*, 391 Mass. 333, 334-35 (1984)) (*Fortune* doctrine merely "serves to deny an employer a financial windfall resulting from the employee's termination, and applies only to the loss of compensation clearly related to an employee's past service rather than future wages or fringe benefits, *such as . . . pension benefits, which the employee might have earned had []he remained employed.*"); *see also Mullen v. Ludlow Hosp. Society*, 32 Mass. App. Ct. 968, 970 n.4 (1992) (allegation that discharge deprived plaintiff of increase in pension benefits was insufficient to demonstrate *Fortune*-type forfeiture).[4/]

---

[4/] Moreover, although Mr. Bradley's "full pension vesting benefits" could only be realized upon his achieving 20 years of creditable service, by statute, members of the Massachusetts Public Employee Retirement System's "Group 4," including district attorneys and assistant district attorneys, who are terminated for reasons not involving moral turpitude and who have completed ten or more years of creditable service have the right to apply for a termination retirement allowance upon attaining age 55. G.L. ch. 32, § 10(2)(b); *see also* G.L. ch. 32, § 3(2)(g) (including assistant district attorneys with ten years of service in Group 4). Under this termination retirement allowance provision, Mr. Bradley—who had ten or more years of creditable service and was terminated for reasons

          2.   *Mr. Bradley Had No Legitimate Interest In 20-Year Full Pension Vesting Benefits Because He Had Not Even Substantially Earned Such Benefits When His Employment With The District Attorney's Office Ended At Least Eight Months Before His 20-Year Anniversary As An Assistant District Attorney.*

Accepting Mr. Bradley's allegations as true, not only did Mr. Bradley never meet the 20-year threshold for full pension vesting benefits, but he did not even come close to meeting it. Mr. Bradley pleaded that he was terminated "just months" before his 20-year pension vesting date. (Comp., ¶ 67.) To be clear, even accepting Mr. Bradley's allegations at face value, he was terminated *eight months* before his 20-year vesting date.[5/] (Comp., ¶¶ 7, 8, 46.)

As a matter of law, if eight months of labor is still required for Mr. Bradley's pension benefit to vest, such vested pension benefit is not closely related to past services, but rather is directly contingent upon completing a significant amount of future work, and Mr. Bradley had no legitimate expectation of receiving the benefit. *See Wong*, 2011 U.S. Dist. LEXIS 80733, at *22 (granting motion to dismiss breach of covenant of good faith and fair dealing claim because employee was terminated five months before she could become eligible for annual bonus and, therefore, had no legitimate expectation of receiving bonus); *Rodio*, 416 F. Supp. 2d at 235 (fact that plaintiff had to be employed for significant period of time into the future for pension benefits to vest precluded inference that his employment was terminated to deprive him of future compensation closely related to his past services); *Shen*, 523 F. Supp. 2d at 54 (dismissing

---

free of moral turpitude—has the opportunity to receive a vested retirement allowance calculated based on the "amount of creditable service equal to that with which he was credited on the date of his termination of service." G.L. ch. 32, § 10(2)(b). Accordingly, this is not a situation in which an employee was deprived of his *entire* pension on the eve of vesting. To the contrary, Mr. Bradley retained a retirement benefit, just not the retirement benefit he really wanted but had not yet earned. These allegations amount to nothing more than an airing of grievances and do not establish the type of forfeiture of earned compensation required of a viable *Fortune* claim.

[5/]    *See supra* note 2, at 2 (discussing Mr. Bradley's misstatement in the pleadings of the date upon which he began his employment as an assistant district attorney, and establishing that Mr. Bradley's actual start date was in June 1992). Taking into account Mr. Bradley's error in the pleadings, he would not have become eligible for 20-year full vesting as an assistant district attorney until some time around December 2013, *well over a year* following his termination.

breach of covenant of good faith and fair dealing claim because "[w]hen terminated, [employee] still had to work for another six months before she could legitimately expect to receive her moving expenses" reimbursement); *Fiorillo*, 2000 Mass. Super. LEXIS 123, at \*11 (plaintiff cannot prove breach of covenant of good faith and fair dealing where fired "a full six months before her benefits were to vest").

Simply put, the allegations, on their face, do not plausibly plead damages in the form of lost pension benefits for work already substantially performed.  Nor may Mr. Bradley cure through amendment; the facts are the facts.

In effect, Mr. Bradley is asking this Court to transform his at will relationship with the District Attorney's Office into a contract for a term of years, completely barring the District Attorney's Office from terminating his employment at any time during the eight months (or more) leading up to his 20-year full vesting date.  This has never been and is not now what the *Fortune* doctrine seeks to do.  *See King v. Driscoll*, 424 Mass. 1, 7 (1996) (quoting *Gram*, 391 Mass. at 334-35) (in denying financial windfall to employer, court must be "careful not to approach allowance of contract damages as if [plaintiff] had a contract for life or for a term of years").  Mr. Bradley's allegations do not provide a basis for this Court to stray from such well-settled Massachusetts law.

**D.      Mr. Bradley's Talismanic Pleading That The District Attorney's Office Terminated His Employment In Bad Faith Cannot Forestall Dismissal Of His Claim For Breach Of The Covenant Of Good Faith And Fair Dealing**.

Where Mr. Bradley utterly failed to plead any substantive allegations raising an inference of bad faith on the part of the District Attorney's Office, his bald allegation that the District Attorney's Office terminated his employment "in bad faith," (Comp., ¶ 67), will not suffice.  *See*

*Morales-Tanon*, 524 F.3d at 18 (quoting *Twombly*, 550 U.S. at 555-56) (more than "labels and conclusions" required to withstand a motion to dismiss under plausibility standard).

Although Mr. Bradley alleged that he told Mr. Cruz at their November 17, 2011 meeting that he wanted to continue working until he reached his purported 20-year anniversary in April 2013, (Comp., ¶ 42), that was Mr. Bradley's statement, and nowhere did he plead that the District Attorney's Office, or any of its agents, did or said anything in response to Mr. Bradley's stated desire. Noticeably absent from the Complaint is any alleged statement or action from the District Attorney's Office, or any of its agents, suggesting that the District Attorney's Office remembered or cared when and if Mr. Bradley received his pension and in what amount.

In fact, the District Attorney's Office had no reason to remember or care when and if Mr. Bradley received his pension and in what amount because the District Attorney's Office did not stand to receive any kind of financial windfall from denying Mr. Bradley the opportunity to fully vest in his pension. The windfall, if any, would inure to the benefit of the Commonwealth generally. The connection between this cost-savings and the financial interests of the District Attorney's Office simply is too attenuated to raise an inference of bad faith. *See Scalli v. Citizens Fin. Grp., Inc.*, No. 03-12413-DPW, 2006 U.S. Dist. LEXIS 7717, at *30 (D. Mass. Feb. 28, 2006) (dismissing breach of covenant of good faith and fair dealing claim because commission payments of which plaintiff was deprived were reassigned to other loan officers and, therefore, did not result in windfall to employer).

Moreover, the allegations themselves belie Mr. Bradley's claim. Accepting Mr. Bradley's allegations as true for purposes of this motion to dismiss, Mr. Cruz angrily forbade Mr. Bradley from involving himself in public policy matters and demanded to know when Mr. Bradley intended to resign *before* Mr. Bradley made any mention of his pension vesting.

10

(Comp., ¶¶ 40-42.)  Further, and as discussed above, the District Attorney's Office terminated

Mr. Bradley's employment at least *eight months* before he reached his purported 20-year pension

vesting date, which completely eviscerates any plausible inference that it did so for the purpose

of denying compensation to Mr. Bradley.  *See Wong*, 2011 U.S. Dist. LEXIS 80733, at \*22 (five-

month lapse between termination and possibility of bonus insufficient to plead *Fortune* claim);

*Shen*, 523 F. Supp. 2d at 54 (six-month lapse between termination and vested interest in

reimbursement insufficient to establish breach of implied covenant of good faith and fair

dealing); *Fiorillo*, 2000 Mass. Super. LEXIS 123, at \*11 (six-month lapse between termination

and vesting date left Mr. Bradley with no reasonable expectation of proving employer breached

covenant of good faith and fair dealing).

Such threadbare and self-contradictory allegations do not state a plausible claim to relief

under *Twombly* and should be dismissed on this motion.  *See Karvelas*, 360 F.3d at 224 (quoting

*Arruda*, 310 F.3d at 18) ("bald assertions" and "unsupportable conclusions" must be rejected

under *Twombly* standard).  Mr. Bradley is asking this Court to assume that the District

Attorney's Office knew and cared when his pension would fully vest, selected a date to terminate

Mr. Bradley's employment at least eight months before his anticipated vesting date, and did all

of this in order to deprive Mr. Bradley of earned compensation even though the District

Attorney's Office stood to gain nothing.  It is simply implausible.  For this reason, and because

Mr. Bradley cannot plead any facts showing he had a legitimate interest in full pension vesting

benefits when the District Attorney's Office terminated his employment, the Court should

dismiss Count IV of the Complaint with prejudice.

**III.   THE COMPLAINT FAILS AS A MATTER OF LAW TO ALLEGE A CLAIM AGAINST MR. CRUZ FOR TORTIOUS INTERFERENCE WITH ADVANTAGEOUS CONTRACTUAL, BUSINESS, OR EMPLOYMENT RELATIONSHIP.**

To set forth a claim of tortious interference with contract in the employment context, a plaintiff must show "(1) he had a contract with a third party; (2) the defendant knowingly interfered with that contract . . . ; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *O'Donnell v. Boggs*, 611 F.3d 50, 54 (1st Cir. 2010).[6/]  Because a defendant may tortiously interfere only with a plaintiff's contract (or business relationship) with a third party, an employee cannot bring a claim of tortious interference with an employment contract against his own employer. *Pierce v. Cotuit Fire Dist.*, 741 F.3d 295, 304 (1st Cir. 2014).

It follows, that an employee, likewise, cannot bring such a claim against the alter ego of his employer.  Indeed, where a corporation and the individual defendant are indistinguishable, "it would exalt form over substance to hold that the corporation could not be sued successfully in contract, but that the corporation's alter ego could be sued successfully in tort." *Harrison*, 433 Mass. at 478.

Here, the District Attorney's Office is, in effect, the very same party as the district attorney himself; therefore, insofar as the District Attorney's Office cannot be sued for tortious interference with its own contract or relationship, nor can Mr. Cruz.  The statutory framework provides that there shall be a district attorney in each district, who shall be a resident of that

---

[6/]    The elements of a claim for tortious interference with advantageous business relations are substantially similar.  To establish that tort, a plaintiff must show:  "(i) the existence of a business relationship between the plaintiff and a third party, (ii) of which the defendant is aware and (iii) with which he intentionally and improperly interferes, (iv) causing an impairment of the business relationship, to the plaintiff's detriment." *Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 33 (1st Cir. 2007) (citing *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 76 (1st Cir. 2001)).

district and a member of the Massachusetts bar and shall be elected for a term of four years.

G.L. ch. 12, § 12.  Each district attorney shall appoint and may, at his pleasure, remove assistant

district attorneys as needed.  G.L. ch. 12, § 16.

In short, whatever employment contract or relationship Mr. Bradley had was with Mr.

Cruz, leaving his claims against Mr. Cruz for tortious interference wanting of a third party.  For

this simple reason, Mr. Bradley cannot sustain a cause of action for tortious interference with

contract or business relations against Mr. Cruz.

### CONCLUSION

The facts, as alleged, show that Mr. Bradley had no legitimate interest in a fully vested

pension benefit upon the termination of his employment with the District Attorney's Office.  At

the same time, the facts, as alleged, fail to raise any inference that the District Attorney's Office

terminated Mr. Bradley's employment for the purpose of depriving him of a fully vested pension

benefit.  Finally, no matter what facts are alleged, Mr. Cruz cannot interfere with his own

contracts or business relations with assistant district attorneys, including with Mr. Bradley.

There is nothing Mr. Bradley could allege that would salvage his claims against Mr. Cruz on

Count III and against the District Attorney's Office on Count IV of the Complaint.  For all the

reasons set forth above, these claims should be dismissed with prejudice.

Dated:  April 4, 2014

Respectfully submitted,

TIMOTHY J. CRUZ, MICHAEL HORAN,
FRANK J. MIDDLETON, and the OFFICE
OF THE DISTRICT ATTORNEY FOR
PLYMOUTH COUNTY

Defendants,

By their attorney,

MARTHA COAKLEY
ATTORNEY GENERAL

By: /s/ *Bret A. Cohen*
Bret A. Cohen
Special Assistant Attorney General
BBO # 637830
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
(617) 542-6000
bcohen@mintz.com

14

## LOCAL RULE 7.1(A)(2) CERTIFICATION

Pursuant to Local Rule 7.1(A)(2), counsel for Defendants certify that they have conferred with counsel for Mr. Bradley and attempted in good faith to resolve or narrow the issues raised in this Memorandum in Support of Defendants Timothy J. Cruz's and the Office of the District Attorney for Plymouth County's Partial Motion to Dismiss Count III of the Complaint (Against Defendant Cruz) and Count IV of the Complaint in its Entirety.

By:        */s/ Bret A. Cohen*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically via the Court's CM/ECF system on April 4, 2014, which thereafter provided notice and service to all parties. Parties may access this pleading through the Court's electronic docketing system.

By:        */s/ Bret A. Cohen*