UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN BRADLEY, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:13-cv-12927-RGS |
|  | ) **Leave to File Granted at** |
|  | ) **September 23, 2014 Status Conference** |
| TIMOTHY J. CRUZ, MICHAEL HORAN, FRANK J. MIDDLETON, and OFFICE OF THE DISTRICT ATTORNEY FOR PLYMOUTH COUNTY, | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR
PARTIAL MOTION TO DISMISS**

As more fully explained herein and in Defendants' memorandum in support of their Motion to Dismiss (the "Motion") Count III (as to Mr. Cruz only) and Count IV (in its entirety) of Plaintiff John Bradley's Complaint (the "Memorandum"), this Court should dismiss Count IV of the Complaint because it does not fall under the *Fortune* doctrine and Count III of the Complaint as to Mr. Cruz because, as the alter ego of the District Attorney's Office, Mr. Cruz cannot interfere with his own contract.

**Count IV is not a *Fortune* Claim.**

Plaintiff's delayed pension vesting theory does not give rise to a *Fortune* claim, and Plaintiff's Opposition to the Motion (the "Opposition") does little to refute that fact. While Defendants stand on the arguments presented in the Motion and Memorandum, they note that the

Opposition fails to correct a fundamental flaw in Plaintiff's delayed vesting argument: when Plaintiff's employment with the District Attorney's Office was terminated, whether he was eight months away from 20 years of service time or over a year away (counting his pleading error), the benefits associated with 20 years of work were not **earned**, notwithstanding Plaintiff's subjective desires.[1/] *See* Opposition, pp. 7-9. Moreover, the *Mullen* case soundly demonstrates that the *Fortune* doctrine concerns itself with forfeitures, and Plaintiff's delayed pension vesting simply does not represent a forfeiture. *Mullen v. Ludlow Hosp. Society*, 32 Mass. App. Ct. 968, 968-70 and n.4 (1992) ("[A] loss of future income for future services does not come within the obligation of good faith and fair dealing imposed in [*Fortune*]").

Recognizing the weakness of his argument, Plaintiff attempts to resuscitate his otherwise lifeless, self-styled *Fortune* claim (Count IV) by sweeping into it the public policy exception to the at-will employment doctrine in Massachusetts. No court has construed the *Fortune* doctrine so broadly, and this life-line argument is, therefore, unavailing. The *Shen* case, which Plaintiff appears to cite to justify his *sua sponte* expansion of the *Fortune* doctrine—to encompass all bad faith conduct of any kind, including terminating an employee in violation of a clearly established public policy—does no such thing. *See Shen v. Biogen*, 523 F. Supp. 2d 48, 54 (D. Mass. 2007) (explaining Plaintiff had not adduced evidence supporting a *Fortune* claim because Defendant terminated her employment "six months *before* her right to relocation would have vested") (emphasis in original).

---

[1/] Nor does the fact that Count IV is likely mooted by Plaintiff obtaining replacement employment (*see* Opposition, p. 8 n.3) have any bearing on Plaintiff's pleading deficiencies.

Simply put, the *Fortune* doctrine and the public policy exception are two wholly distinct legal theories. Plaintiff conflates the *Fortune* doctrine and public policy exception *and admits he is doing so*. *See* Opposition, p. 9 ("The Plaintiff recognizes that to some extent his interpretation of Count IV renders the count somewhat duplicative of Count V [Wrongful Termination in Violation of Public Policy]"). The Complaint already contains a claim for wrongful termination in breach of public policy: Count V—and Plaintiff can develop his public policy theory through discovery. Though also wholly without merit, the fact that Defendants choose not to move to dismiss Plaintiff's public policy claim should have no effect whatsoever on Plaintiff's doomed *Fortune* claim. Plaintiff has failed to plausibly plead a *Fortune* claim, and this Court should therefore dismiss Count IV.[2/]

### **Mr. Cruz, as the Alter Ego of the District Attorney's Office, Cannot Interfere with His Own Contracts, and Count III Should be Dismissed.**

Plaintiff's tortious interference claim (Count III) against Mr. Cruz should also be dismissed for failure to state a claim upon which relief may be granted. First, contrary to the Opposition's assertion, the Memorandum does cite a case for Defendants' "leap of faith" that Plaintiff cannot plausibly plead a tortious interference claim against Mr. Cruz because he is the alter ego of the District Attorney's Office.[3/] *See* Memorandum, p. 12 (citing *Harrison v.*

---

[2/] In a peculiar aside, after acknowledging conflation of the *Fortune* doctrine and the public policy exception, the Opposition suggests that it is "too early to streamline the pleadings . . . just for the sake of convenience." Opposition, p. 9. Neither Fed. R. Civ. P. 12 nor the *Twombly* line of cases mention "convenience" as a factor in the analysis of the plausibility of the allegations in a Plaintiffs' Complaint. *See*, *e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[3/] Plaintiff's own pleading choice belies the painfully strained notion that the District Attorney's Office was not Plaintiff's employer, *see* Opposition, p. 10. Plaintiff named Mr. Cruz, Mr. Horan, and Mr. Middleton individually in his tortious interference count. He did not name the District Attorney's Office—presumably because

*Netcentric Corp.*, 433 Mass. 465, 473 (2001) (explaining "it would exalt form over substance to hold that the corporation could not be sued successfully in contract, but that the corporation's alter ego could be sued successfully in tort.")). Second, there is no need to develop a factual record to determine whether Mr. Cruz is the alter ego of the District Attorney's office as it is plain from the statute governing Plaintiff's employment relationship that he served at the pleasure of Mr. Cruz. *See* G.L. ch. 12, § 16.

Finally, we respectfully suggest that this Court should disregard Plaintiff's suggestion that Count III against Mr. Cruz should proceed to discovery for the "practical" reason that Mr. Cruz shares the same attorney as Mr. Horan and Mr. Middleton, because practicalities do not absolve Plaintiff of his well-established pleading burden. It is axiomatic that Mr. Cruz cannot interfere with his own contracts, and Count III against Mr. Cruz should be dismissed.

For the foregoing reasons as well as those set forth in detail in their Memorandum, Defendants respectfully request that this Court dismiss Count IV (in its entirety) and Count III (against Mr. Cruz) of the Complaint with prejudice.

---

he understood (on some level) that his employment relationship was with that office and the office could not interfere with its own contracts or relationships. *See* Complaint, ¶¶ 60-64.

Dated:  October 7, 2014

Respectfully submitted,

TIMOTHY J. CRUZ, MICHAEL HORAN, FRANK J. MIDDLETON, and the OFFICE OF THE DISTRICT ATTORNEY FOR PLYMOUTH COUNTY

Defendants,

By their attorney,

MARTHA COAKLEY
ATTORNEY GENERAL

By: /s/ *Bret A. Cohen*
Bret A. Cohen
Special Assistant Attorney General
BBO # 637830
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
(617) 542-6000
bcohen@mintz.com

## CERTIFICATE OF SERVICE

       I hereby certify that a copy of the foregoing was filed electronically via the Court's CM/ECF system on October 7, 2014, which thereafter provided notice and service to all parties. Parties may access this pleading through the Court's electronic docketing system.

       By:     */s/ Bret A. Cohen*