```
                      UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS


 JOHN BRADLEY,                     )
                    Plaintiff,     )
                                   )
                                   )
 vs.                               ) CA No. 13-12927-IT
                                   )
                                   )
 OFFICE OF THE DISTRICT ATTORNEY   )
 FOR PLYMOUTH COUNTY,              )
                    Defendants.    )



 BEFORE:   THE HONORABLE INDIRA TALWANI



                         STATUS CONFERENCE




         John Joseph Moakley United States Courthouse
                      Courtroom No. 17
                     One Courthouse Way
                       Boston, MA 02210
                  Tuesday, September 23, 2014
                         2:27 p.m.




                 Cheryl Dahlstrom, RMR, CRR
                    Official Court Reporter
         John Joseph Moakley United States Courthouse
                 One Courthouse Way, Room 5507
                       Boston, MA 02210
           Mechanical Steno - Transcript by Computer
```

```
 1   APPEARANCES:

 2   ON BEHALF OF THE PLAINTIFF:

 3        SINSHEIMER & ASSOCIATES
          By:  Robert S. Sinsheimer, Esq.
 4             Michael R. Harriman, Esq.
          92 State Street
 5        Boston, Massachusetts 02109

 6   ON BEHALF OF THE DEFENDANTS:

 7        MINTZ, LEVIN, COHN, FERRIS, GLOVSKY and POPEO, PC
          By:  Bret A. Cohen, Esq.
 8             Robert O. Sheridan, Esq.
          One Financial Center
 9        Boston, Massachusetts 02111

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

THE CLERK: This is Civil Action 13CV12927, John Bradley v. Timothy J. Cruz. The Honorable Judge Indira Talwani presiding. U.S. District Court for the District of Massachusetts is now in session. Will counsel please identify themselves for the record.

MR. SINSHEIMER: Good afternoon, your Honor. My name is Robert Sinsheimer, and I represent Mr. Bradley.

MR. HARRIMAN: Good afternoon, your Honor. Michael Harriman on behalf of the plaintiff, John Bradley.

MR. COHEN: Your Honor, good afternoon. Bret Cohen, and I represent, with my colleague Rob Sheridan, the defendants.

THE COURT: Okay. I think we're here on what was labeled a status conference, but I guess it's technically a scheduling conference. As I see this, we haven't had a Rule 16 conference in this case yet, is that correct?

MR. COHEN: That's correct, your Honor.

THE COURT: And there's --

MR. HARRIMAN: That's right, your Honor. We docketed, before we came over here, a joint statement sort of in the spirit in the Rule 16.

THE COURT: I appreciate that. I recognize that we hadn't asked for it and we needed it.

The other thing we need to take up before I turn to

1   that is the motion to dismiss.  As I look at the docket -- and
2   please correct me, but it looked like -- if I'm wrong -- it
3   looked like the motion was dismissed was -- denied without
4   prejudice.  Was that accurate?
5       MR. COHEN:  Yes, your Honor.  The history on that, if
6   I may, is that we had agreed, after we had filed our motion to
7   dismiss and before they dismissed their response, to engage in
8   a voluntary mediation before a magistrate judge.  Once that
9   failed, we agreed to a briefing schedule, extend them
02:29 10   additional time to respond.  They just responded a few days
11   ago.  So that, as I see it, we need to be marked up for a
12   hearing.
13       MR. SINSHEIMER:  I agree.
14       THE COURT:  We can do that.  The technical issue from
15   my vantage point is I don't actually have a motion on the
16   docket because, once it was denied, the little hammer comes
17   off.  And so if you wouldn't mind -- I guess it doesn't really
18   matter whether you do it or we do it.  Probably the simplest
19   thing is if you could simply refile the identical motion.  You
02:30 20   don't have to -- I don't know if -- there is a memorandum.  I
21   don't remember if there's anything else.  But simply the motion
22   and then you can cite back to it.  But that just gets the
23   motion tracked.  Otherwise, when we print out our outstanding
24   motions, it just doesn't show up.
25       MR. COHEN:  Fine, your Honor.  Happy to do that.

1       THE COURT:  Thank you.

2       MR. COHEN:  Do you mind if we stick with that theme

3  for just one more half a second, if you don't mind, since we

4  have your attention?

5       THE COURT:  Certainly.

6       MR. COHEN:  Is that we'll likely be wanting to submit

7  a sur-reply to their -- I'm sure there won't be an objection

8  from them.  I would be happy to file a motion to that effect.

9  I'm trying to not cloud the Court with more paperwork.

02:30  10       THE COURT:  We can address that right now.  You're

11  saying you do want to or you're likely to?

12       MR. COHEN:  We'd like to file a reply -- sur-reply to

13  their reply.

14       MR. SINSHEIMER:  I think it's a reply.

15       THE COURT:  It's a reply.

16       MR. SINSHEIMER:  He's the moving party.  We opposed

17  it.

18       MR. COHEN:  I'm more confused now because you took our

19  thing off the docket.

02:31  20       MR. SINSHEIMER:  I have no objection to anybody filing

21  whatever they want.  I know you might, but I'm not going to get

22  in the way.

23       THE COURT:  Now I know to be very careful when things

24  come assented to, that I still need to prepare for because

25  you're just signing off on it now.

```
 1              MR. SINSHEIMER:  I just mean on this narrow issue.
 2              THE COURT:  Yes.  Can you keep it -- I believe the
 3   opposition isn't that lengthy.  If I could ask that you keep it
 4   to five pages.
 5              MR. COHEN:  Sure.  Yes, your Honor.
 6              THE COURT:  Leave is granted.  You can go ahead and
 7   file it.  What's the timeline that you would want for that?
 8              MR. COHEN:  Could we just do it in the next two weeks,
 9   please?
10              THE COURT:  That's fine.
11              MR. COHEN:  Thank you.
12              THE COURT:  Initial disclosures, October 1.  I've
13   been -- in my scheduling order, which I didn't have sent out to
14   you, I've been modeling it on language that -- with regard to
15   the disclosures, not with regard to the rest of it -- language
16   from Judge Tauro's order that -- I don't know whether it was
17   intentional or not, but he asks that initial disclosures
18   include the information relevant to the dispute rather than
19   simply the information supporting one side or the other.  He
20   then prohibits written discovery, which I'm not suggesting.
21   But it does seem to me that broadening the initial disclosures
22   could avoid a lot of the expense and burden of written
23   discovery.  You know it's there.  You know they're going to ask
24   for it.  Sort of get it out.
25              I understand you could have a dispute about what's
```

```
 1    relevant, and this isn't really the time to do it.  But I would
 2    ask that the initial disclosures be somewhat broader than
 3    merely the documents you're using to support your case but
 4    rather the documents that you understand to be relevant to the
 5    dispute.
 6              MR. HARRIMAN:  That are in our possession and control
 7    or documents generally?
 8              THE COURT:  The initial disclosures need to identify
 9    -- under the rules, need to identify the documents, so that
10    would be broader.  But the local rules require production of
11    the documents.  Those would be limited to the ones in your
12    control.
13              MR. HARRIMAN:  The parties have exchanged initial
14    disclosures, but we would be agreeable to going back and
15    broadening them if that's what your Honor --
16              MR. COHEN:  We would be as well.  I very much believe
17    in Louis Brandeis had it right.  Sunlight is the best
18    disinfectant.  Let's just get it all out right now.
19              THE COURT:  I think that was Judge Tauro's attempt to
20    do this.  I know from sitting where you are, it could be
21    frustrating if you couldn't get your written requests as well.
22    But I think the intention is to sort of get it all out and try
23    to move forward and not waste a lot of time.  That's the spirit
24    in which I would suggest we do that.  If that is doable by the
25    October 1 date that you've put in here?
```

```
 1              MR. COHEN:  Yes.
 2              MR. HARRIMAN:  Yeah, I think so, your Honor.
 3              MR. COHEN:  From our perspective, yes.
 4              The one other thing I might add -- and I think my
 5   brothers on the other side of the table would agree -- we'll
 6   have a much better idea what's relevant after this Court opines
 7   on our motion to dismiss because it impacts the discovery and
 8   the information that's going to be relevant.  So for what this
 9   is worth, it might make some sense to -- we'll get our reply
10   back as soon as we possibly can.  And then, you know, we would
11   be amenable to a hearing date consistent with this Court's
12   calendar, sooner than later, so we could have a better
13   understanding of how to conduct our discovery.  I think a good
14   chunk of that motion would take care of part of the complaint
15   and change the course of discovery.
16              THE COURT:  I've looked at the motion and opposition
17   quickly, but I'm correct that it doesn't get rid of any of the
18   parties.
19              MR. COHEN:  It doesn't get rid of the parties, but it
20   gets rid of a number of the claims, which would focus the
21   discovery considerably.
22              THE COURT:  The claim that -- so you're suggesting
23   that getting rid of the Fortune claim would somehow limit
24   something, is that --
25              MR. COHEN:  Let me just give you by way of example
```

only, and I will confess not being prepared to argue that motion right now. But the Fortune claim -- I'm not sure how familiar this Court is with the Fortune doctrine and the like. But it's particularly complicated in this instance because the net-net of it is that the plaintiff is claiming that he was deprived of, in this instance, a part of his retirement because of the timing of our termination.

Setting aside that we don't agree with that factually, and forget the substantive arguments, the fact of the matter is, that's going to require, like, expert testimony and a significant understanding of how the state retirement system works, something that we've worked tirelessly to try to figure out ourselves heretofore now with not a lot of luck.

THE COURT: So if I would commit to resolving this before you have to do expert disclosures, that would take care of that problem?

MR. COHEN: That and also, your Honor, doing discovery of the retirement board and getting the actual documents from them, which we would have to have the actual -- his start date figured out because that's what triggers the time that he would have vested. It's more than just the expert disclosures that would be affected. It's actually the fact discovery on the issue of his Fortune claim.

THE COURT: Well, ultimately, if he were to prevail on the other ones, wouldn't that same information come in as

```
 1    damages?
 2            MR. COHEN:  I don't think so, your Honor, and I don't
 3    think so because he's now working in Worcester.  He's going to
 4    have his chance to vest.  It's complicated.  And that's part of
 5    the reason why getting rid of the Fortune claim, I think,
 6    completely takes care of the whole concept when he vests on his
 7    pension because he's going to vest anyway.
 8            MR. SINSHEIMER:  If I may?
 9            THE COURT:  Yes.
10            MR. SINSHEIMER:  I don't agree that the motion affects
11    discovery in any substantial way.  And here's why:  The good
12    news, of course, is that my client is working again serving the
13    people.
14            The issue now is that there's an 18-month delay in
15    what would have been his pension.  The present value of that
16    may be very small.  I might be willing to waive it.  But I
17    don't see how it's going to affect discovery.  We can agree to
18    get whatever we need to get out of the retirement board.  We
19    can agree on what his start date is.
20            The difficult discovery of this case is that -- and I
21    say this with all respect about my own client.  There's not one
22    thing that these people, who used to be friends, will agree
23    upon.  If one of them says the sun came up, the other one is
24    going to say it's the moon.  This is an old-fashioned
25    Donnybrook, if you'll pardon the colloquial expression.  I
```

1    don't think it has too much to do with these technical issues,
2    not that I'm not aware of them and not that I don't think at
3    some point damages could be complex.  But the meat of it now is
4    this 18-month lost actual income.  That's the meat of the case.
5    The good news, because he's working, it's boiled down.
6         THE COURT:  So you're going to do the briefing on the
7    reply.
8         MR. COHEN:  Yes.
9         THE COURT:  I would suggest that you go forward with
02:39 10  the discovery.  We'll go through the schedule.  I will modify
11   or make clear that with this expansive initial discovery -- or
12   initial disclosures, if you are disclosing the documents
13   relevant to the causes of action without reserving the issues
14   that are completely distinct by Fortune, I think we could still
15   get through them with the written discovery and so forth.  I
16   really look at the initial disclosures as sort of a good-faith
17   effort to do something more than the minimum required by Rule
18   26.
19        With regard to specific written discovery and
02:39 20  depositions and so forth, I would suggest you proceed along as
21   you each view fit.  I will try to timely address this motion.
22   If at some point the requests that are coming seem burdensome
23   and you can't work it out, come back to me, and we'll see if we
24   can -- I can either move quicker or we can push something down
25   the road.

|  |  |
|---|---|
| 1 | MR. COHEN: Fair enough, your Honor. |
| 2 | THE COURT: I'm working a little bit -- this is a 2013 |
| 3 | case, so I have -- I would like to just keep it moving. I'm |
| 4 | going to do my best on this motion. It wasn't on my radar |
| 5 | screen because, as I said, the hammer had disappeared. But |
| 6 | we'll try to move it quickly. I'd also -- to the extent that |
| 7 | the discovery can move forward, I would think most of what |
| 8 | you're going to have is going to be the same as you're looking |
| 9 | at what actually happened at the workplace as opposed to what |
| 02:40  10 | happened at the pension board. |
| 11 | So you're looking for a December -- no, a February |
| 12 | 15th date for -- so six months. Do you need that much time? |
| 13 | MR. HARRIMAN: Personally, we don't, your Honor. |
| 14 | We're comfortable with a shorter timeline as long as the Court |
| 15 | is. |
| 16 | MR. COHEN: Let me explain the reason for the -- six |
| 17 | months to start a case and finish a case really isn't that |
| 18 | much. That's where we are because of the delay in getting |
| 19 | started here. But the reason is we have a public official in |
| 02:41  20 | Timothy Cruz. He also has an election in November. I have |
| 21 | three other defendants I have to manage on top of that. |
| 22 | There's a lot to juggle making all of that work. You wouldn't |
| 23 | believe how much effort it takes just to get the initial |
| 24 | disclosures together and the like when you have that many |
| 25 | people. |

1           At the end of the day, we -- I'm also having -- I've
2    been appointed as Special Assistant Attorney General for
3    purposes of this.  I have yet another constituency that I have
4    to report back to.  Things move at a little bit of a slower
5    pace when I have to deal with that.  That's the reason for the
6    timeline.
7           THE COURT:  I'm going to give the jointly proposed
8    timeline, but I would discourage further extensions on it.  I
9    just -- I understand that it was through attempts to mediate
02:42 10  and resolve, which we certainly encourage, but it now shows
11   back up as a 2013 case.  So --
12          MR. COHEN:  Understood, your Honor.  Thank you.
13          THE COURT:  I'd like to set a status conference for
14   the close of -- around the fact discovery.  That's what you've
15   requested.  So that looks like around February 13th.
16          MR. HARRIMAN:  That's correct, your Honor.
17          MR. COHEN:  That's correct, your Honor.
18          MR. HARRIMAN:  At the Court's convenience.
19          THE COURT:  Friday, February 13th, at 2:30.
02:42 20         MR. HARRIMAN:  Thank you, your Honor.
21          MR. COHEN:  Thank you.
22          THE COURT:  Okay.  I take it that from where you are,
23   there's no further point in ADR.  But I will raise it at that
24   conference.  Sometimes clients need to not be the one to
25   suggest first going back to mediation.  So take it as a request

1   from me to report back to me when you come back as to whether
2   either side or both sides are willing to have further
3   mediation.
4            MR. COHEN:  That's fine, your Honor.  I'm going to go
5   out on a limb.  I've never appeared before you, but I'm going
6   to go out on a limb and make a suggestion, which would be it
7   might not be a bad idea if, for that scheduling conference, you
8   ask that all parties be present for it.  Normally, for a
9   scheduling conference, I wouldn't bring my clients.  Any
02:43 10   dispositive motion, I always have them here because if I lose,
11   I want them to see I left it all on the field even if I lost.
12   Scheduling conference I normally wouldn't, but maybe to get the
13   Court's view of the world for both parties' sake might not be a
14   bad idea at that point after discovery has taken place and the
15   like.  Just my suggestion.
16            MR. SINSHEIMER:  I actually -- and I've also never
17   appeared before your Honor.  I don't know if too many of us
18   have.  Congratulations.
19            THE COURT:  I don't think so.
02:44 20            MR. SINSHEIMER:  I always like to find kernels of
21   agreement even in contentious cases.  I don't know that that's
22   a bad idea.  I'm now going to, however, embarrass myself a
23   little bit because, if we're going to do that, I'm going to
24   respectfully suggest, for my own selfish reasons, it not be a
25   Friday in winter.  I don't know that I need to say more than

```
            1    that but maybe some other day of the week.  I want to be candid
            2    about that.  I don't think, if it was just a status conference,
            3    I would be here on February 13th, but I didn't say anything
            4    because a status is a status.  Mr. Harriman is a very
            5    experienced lawyer.  But if you want to have clients, then I've
            6    got to be here too.  So could we pick another date?
            7              THE COURT:  How is the day before?
            8              MR. SINSHEIMER:  Perfect.
            9              THE COURT:  The 12th?
02:45      10              MR. COHEN:  It's Abraham Lincoln's birthday, but other
           11    than that, I'm clear.
           12              MR. SINSHEIMER:  As long as I can get to Vermont.
           13              THE COURT:  I think it's celebrated at a different
           14    time.
           15              MR. COHEN:  Yeah.
           16              THE COURT:  3:00 on the 12th and request that clients
           17    are here and be prepared to respond as to whether you would
           18    like additional mediation.  Were you in front of a magistrate
           19    judge or --
02:45      20              MR. SINSHEIMER:  Judge Niedermeier.  Again, the other
           21    thing, my client's a homicide prosecutor, and I think you're
           22    aware of that.  So I just -- I'm going to send him an email six
           23    months out now, Try to be available February 12th.  The world
           24    isn't always as simple for these guys as it is for the rest of
           25    us.  I certainly wouldn't want -- I know technically you trump.
```

1    I'm well aware of that.  Federal authority --

2             THE COURT:  I don't think that he needs to be here if

3    it interferes with the work and same for defendants' clients.

4    I would ask that each side give the other three days notice,

5    though, so that -- and the Court so that we don't have one side

6    showing up and not the other.

7             MR. SINSHEIMER:  That's more than fair.

8             MR. COHEN:  Thank you.

9             MR. SINSHEIMER:  Thank you.

02:46 10          THE COURT:  I'm going to leave the expert discovery as

11   you have it listed here, but I guess -- maybe I should ask this

12   question of whether we'd want to take it up on February 12th or

13   decide now.  Is it clear to you that dispositive motions would

14   wait -- would need to wait until after expert discovery, or are

15   there potentially -- is that something that should be addressed

16   at the status conference?

17            MR. COHEN:  Your Honor, I would prefer to do it after

18   the experts are disclosed and deposed and finished.  I've made

19   the mistake early on in my career of keeping my eye off the

02:47 20  damages ball and focused on the liability ball.  There could be

21   damages experts here that could also create dispositive issues,

22   and I'd just prefer to wait.

23            THE COURT:  Okay.  So let's -- I may live to regret

24   this, but having spent more time on that side than this side,

25   it seems to me that it isn't always in the clients' interest to

1   take a case all the way to the end before addressing what might
2   be the actual issues that could resolve the case.  So I will
3   raise the question at the status conference as to whether there
4   are dispositive issues even if you wanted to reserve a further
5   dispositive issue on damages that would be addressed by the
6   experts.  But if there are dispositive issues at that point or
7   partially dispositive, I would like to have a discussion about
8   it.
9           You know, it seems to me that taking cases all the way
02:48 10  to their end and then bringing a summary judgment motion that
11  raises six arguments when, had you raised one of them or five
12  of them earlier on and had won or lost, the case would have
13  either been over or settled, suggests that that question should
14  be confronted earlier on.  I'll ask the question for now.
15  We'll put the schedule in place.
16           MR. COHEN:  Your Honor, I embrace that idea.
17           MR. HARRIMAN:  We do as well, your Honor.  Thank you.
18           THE COURT:  Okay.  And trial also, we will look at
19  dates.  I'll probably ask again at the status conference and
02:49 20  probably not address that until we've addressed the dispositive
21  motions.
22           MR. COHEN:  Thank you, your Honor.
23           MR. HARRIMAN:  That's fine, your Honor.  Thank you.
24           THE COURT:  Anything else that you have for me?
25           MR. COHEN:  No.  This was an incredibly pleasant first

1    time in front of your Honor.  Thank you.

2             THE COURT:  Despite a telephone going off.

3             MR. COHEN:  You're right.

4             MR. SINSHEIMER:  And for that, I apologize, your

5    Honor.  He got me there.

6             THE COURT:  I had a phone go off yesterday as well,

7    and I'm sort of thinking maybe I need to be a little --

8             MR. SINSHEIMER:  I know better, your Honor.  Thank

9    you.

02:49 10             THE COURT:  No problem.

11            MR. COHEN:  Thank you, your Honor.

12            THE CLERK:  Court's in recess.  All rise.

13   (Whereupon, at 2:50 p.m. the hearing concluded.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter to the best of my skill and ability.

/s/Cheryl Dahlstrom              October 9, 2014
Cheryl Dahlstrom, RMR, CRR       Dated
Official Court Reporter