```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


JOHN BRADLEY,                       )
                    Plaintiff,      )
                                    )
                                    )
vs.                                 )  CA No. 13-12927-IT
                                    )
                                    )
OFFICE OF THE DISTRICT ATTORNEY     )
FOR PLYMOUTH COUNTY,                )
                    Defendants.     )



BEFORE:  THE HONORABLE JUDGE INDIRA TALWANI



                 HEARING ON MOTION TO DISMISS




     John Joseph Moakley United States Courthouse
                   Courtroom No. 17
                   One Courthouse Way
                   Boston, MA 02210
                 Thursday, October 30, 2014
                         2:27 p.m.




              Cheryl Dahlstrom, RMR, CRR
                 Official Court Reporter
     John Joseph Moakley United States Courthouse
              One Courthouse Way, Room 5507
                     Boston, MA 02210
         Mechanical Steno - Transcript by Computer
```

```
 1   APPEARANCES:

 2   ON BEHALF OF THE PLAINTIFF:

 3        SINSHEIMER & ASSOCIATES
          By:  Robert S. Sinsheimer, Esq.
 4        92 State Street
          Boston, Massachusetts 02109
 5
     ON BEHALF OF THE DEFENDANTS:
 6
          MINTZ, LEVIN, COHN, FERRIS, GLOVSKY and POPEO, PC
 7        By:  Bret A. Cohen, Esq.
               Robert O. Sheridan, Esq.
 8        One Financial Center
          Boston, Massachusetts 02111
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2            THE CLERK:  This is Civil Action 13CV12927, John
 3   Bradley v. Timothy J. Cruz, et al.  The Honorable Judge Indira
 4   Talwani presiding.  U.S. District Court for the District of
 5   Massachusetts is now in session.  Will counsel please identify
 6   themselves for the record.
 7            MR. SINSHEIMER:  Good afternoon, your Honor.  Robert
 8   Sinsheimer for the plaintiff.
 9            MR. COHEN:  Your Honor, good afternoon.  Bret Cohen
10   for the defendants.
11            MR. SHERIDAN:  Good afternoon, your Honor.  Rob
12   Sheridan for the defendants.
13            THE COURT:  Okay.  We're here on defendants' motion to
14   dismiss.  It's your motion.
15            MR. COHEN:  May I proceed, your Honor?
16            THE COURT:  Yes.
17            MR. COHEN:  I was waiting for the proper cue here.
18            Your Honor, thank you for taking the time to see us
19   today.  This will be one of the few times, I think, in my
20   entire career that when I say I will be brief, I actually will
21   be.  I think that the issues in front of the Court are
22   succinct.  I suspect, from the times I have appeared before you
23   -- well, the time -- that you will be prepared, and I won't
24   bore you with the recitation of the facts because I think you
25   understand why we're here.
```

1       What I would like to do is just quickly tick off what
2  is -- what's in front of the Court, and then we'll go through
3  each of the two counts in order.  And then, of course, I will
4  be prepared to take whatever questions that you have.
5       First, the Court appreciates there are six counts in
6  front of it.  If it wasn't relevant, I wouldn't mention what
7  they are.  The six are:  1), there's a 1983 action; 2), there's
8  a Mass. civil rights action; 3), there's a tortious
9  interference with contract action relevant to the reasons we're
10 here today; 4), there's a breach of covenant of good faith and
11 fair dealing claim, otherwise known as Fortune claim, which is
12 the other reason why we're here today.  The fifth claim is
13 wrongful termination and violation of public policy; and the
14 last claim is a violation of the Mass. Whistleblower's Statute.
15      Now, the only two claims that are in front of the
16 Court are the tortious interference and the covenant of good
17 faith a fair dealing claims.
18      THE COURT:  You know, to short circuit a little bit of
19 your discussion, I understand that the plaintiff is suggesting
20 that the Fortune claim might survive on a public policy-type
21 argument.  I assume that was your reason for listing the six.
22 Maybe not.
23      MR. COHEN:  It is.  It is.  And so thank you, your
24 Honor.  What I would have said at the end of that particular
25 discussion would have been perhaps that in line of damages and

1   the like would survive, but it would be in a different claim.

2   So, your Honor, I understand from doing the research
3   that I could that you're not unfamiliar with employment law.
4   So I won't -- I will keep that in mind as we go through this.
5   But just so that I'm making a clear record of our position on
6   this, I think you can appreciate why I would do that.

7   As this Court appreciates, the standard rule of law in
8   Massachusetts is that employees are employed at the will of
9   their employer unless there's a contract. And the exception to
02:29 10  that are those that are prohibited by law: discrimination, et
11  cetera, et cetera.

12  What's happened, as this Court appreciates, is that at
13  some point the courts have also come up with other exceptions,
14  and the one that we're here to discuss is the Fortune line of
15  cases. I think I might be the only Massachusetts lawyer who
16  has actually tried to verdict two Fortune claims. One of them
17  is the *Okerman* case, which has gone up and down to the Court of
18  Appeals a bunch of times and finally settled.

19  But I think for just a quick moment, the rubric of
02:30 20  that case is appropriate to discuss, which is in that instance,
21  as this Court, I think, probably appreciates, there's a guy
22  that sold cash registers for a long time and probably didn't
23  make a lot of money doing it. And then roughly in the early
24  '70s he hits a big sale, a huge sale. He's going to make
25  millions and millions of dollars literally, in 1970 dollars, as

1     a consequence of that sale.

2            And his employer, roughly speaking, says, Hey, look.
3     We can't paid you that much in commissions.  Well, let's agree
4     to take less.  He says, Why would I do that?  They said, If you
5     don't do that, we're going to fire you, the undercurrent theme
6     being:  we can.  There's no exception to the at-will doctrine
7     under those circumstances at that point in the law.

8            So, ultimately, that case goes up to the SJC, and the
9     SJC says, No, no, you can't do this.  You cannot fire somebody
02:31 10   -- now we're starting to get into the meat of it.  You cannot
11    fire an employee in bad faith to avoid paying them compensation
12    that they've earned and is due and payable that results in a
13    windfall to you as the employer.  That's what the law is.

14           And the key part of that for this discussion of --
15    falls in a couple different spots.  And I'm going to cite
16    *Harrison v. NetCentric*, SJC, 2001 case.  The employee must be
17    terminated in bad faith, and the compensation is clearly
18    connected to work already performed.

19           Now, with that umbrella, Mr. Bradley's Fortune claim
02:31 20   fails for three reasons.  The first is because Fortune does not
21    extend to compensation contingent upon events that have not yet
22    occurred, and the courts have expressly provided, binding
23    appellate precedent, that that applies to unvested pension
24    benefits.  Black Letter Law.  It fails for a second time --
25           THE COURT:  Which I don't need to reach if I get to

1  rule on the first.

2          MR. COHEN: Say that one more time, your Honor.

3          THE COURT: The second and third arguments I don't
4  need to reach if I rule for you on the first.

5          MR. COHEN: That's absolutely correct, your Honor.

6          I think the Court would appreciate, before I get to
7  the second and third real quickly, we have other arguments in
8  our brief. I'm not raising them right now relative to Fortune
9  because they're in our brief. But I think, just to spell it
10 out and try to be clear and succinct and brief, which is not my
11 normal characteristic, I thought we would try.

12         The second is that Fortune requires that there be a
13 windfall to the employer because the bad-faith termination.

14         And even if you were to abandon -- and this is -- both
15 those instances are binding Massachusetts appellate
16 precedent -- then it still requires that the termination be
17 connected in some close proximity to the deprivation of the
18 compensation. There needs to be some temporal. And what I
19 would do by analogy, or say by analogy, is that, in the
20 connection with, say, the retaliation claim and discrimination,
21 the Court said, if the protected conduct is on Day One but the
22 termination takes place three years later, the courts -- that's
23 too far away. Generally, the courts have said, in that
24 instance, six months is something to look at. I'm going to go
25 through just a couple of cases that kind of define that in a

1   minute.

2   Okay.  So just real quickly, the only really two facts
3   to the first point, which is that unvested pension benefits
4   don't fall within this category to be protected by Fortune, he
5   alleges in the complaint, Paragraph 45, 46, that the District
6   Attorney's Office terminated Mr. Bradley's employment eight
7   months shy of reaching his 20-year pension vesting date.  As a
8   result of this involuntarily termination, Bradley, who would
9   have been able to begin receiving pension following separation
10  from the DA's office is now required to wait approximately
11  eight years before he can begin receiving these benefits, et
12  cetera.  That's in the complaint, Paragraph 9.  At issue under
13  -- is simply unvested pension benefits.

14  Now, the courts have said that -- in *Mullen*, for
15  example, the loss of future income for future services does not
16  come within the obligation of good faith and fair dealing for
17  Fortune.  In that very case, Court of Appeals, 1992, the court
18  said, "The plaintiff's allegation in his affidavit that his
19  discharge deprived him of an increase in pension benefits is
20  not sufficient to demonstrate a Fortune-type forfeiture."

21  THE COURT:  Any pension cases that go plaintiff's way?
22  MR. COHEN:  Could not find a single case.  That was
23  going to be my last point.  By the way, they don't point to any
24  single pension case either.  And, you know, I always get
25  nervous saying there's no case out there.  But we've searched

|  |  |
|---|---|
| 1 | and could not find one, and they did not point this Court to a |
| 2 | pension case. |
| 3 | THE COURT: Do you think it would make a difference if |
| 4 | it was a day before the vesting versus eight months? |
| 5 | MR. COHEN: Your Honor, I'm smiling because I asked |
| 6 | that of my colleague. I said, What if she asks me that very |
| 7 | question? And the answer is, no, it doesn't, because the |
| 8 | courts have said that this kind of benefit is not the kind to |
| 9 | which Fortune applies. Maybe he has that in another category |
| 02:35 10 | of damages, another count, just not a Fortune claim. And your |
| 11 | colleague, Judge Dein, down the hall or a floor or whatever, in |
| 12 | *Rodio*, looked at this very issue and concluded, in *Rodio v.* |
| 13 | *R.J. Reynolds*, D Mass. 2006, cited in our brief, that -- and I |
| 14 | think this is important because is goes to the heart of what |
| 15 | Fortune is. It says, "It is undisputed that *Rodio*, the |
| 16 | plaintiff, obtained that much of his pension to which he was |
| 17 | entitled to at age 50, his age when his employment terminated. |
| 18 | Thus, Rodio's employment clearly was not ended to deprive him |
| 19 | of compensation of benefits." And, as my colleague pointed |
| 02:36 20 | out, thankfully, we don't have that one-day situation here. So |
| 21 | that's the first reason. |
| 22 | The second one is that the -- there's a requirement |
| 23 | that there's a windfall on the company. There needs to be an |
| 24 | allegation by the plaintiff that -- at this stage of the game, |
| 25 | that we fired Mr. Bradley to avoid paying him compensation and |

|  |  |
|---|---|
| 1 | that we received a windfall for that.  The reason why the |
| 2 | windfall for that is relevant, if you look at some of -- the |
| 3 | way the cases have come out, they've said, Wait a second. |
| 4 | Somebody who's a commission sales rep, they get fired, what the |
| 5 | company then does is they say -- plaintiff says, I didn't get |
| 6 | paid for commissions.  The company says, Wait a second.  We |
| 7 | took all those clients that were in the process of paying and |
| 8 | the like, and we redistributed those clients and those |
| 9 | relationships to other commission sales reps, allowed them to |
| 02:37 10 | get the commissions because they're the one who are going to |
| 11 | have to manage the relationships on a going-forward basis.  We |
| 12 | didn't make any more money because of this.  And the courts |
| 13 | have said the failure to have a windfall to the employer also |
| 14 | takes it out of the rubric of Fortune claims.  They don't even |
| 15 | allege that we got a windfall. |
| 16 | Now, your Honor, they don't allege it because they |
| 17 | never could.  So the DA's office didn't get a windfall because |
| 18 | we didn't pay him these additional benefits.  It's a pension -- |
| 19 | Mass. pension whatever it is.  They haven't alleged it because |
| 02:38 20 | they can't allege it.  But the failure to allege it is also |
| 21 | critical to their defeat of this particular claim although I |
| 22 | don't think you need to get there. |
| 23 | THE COURT:  So if the claim is not a Fortune claim but |
| 24 | if the claim is, You fired me right then because you knew |
| 25 | that's when it was going to hurt the most, is that covered |

1   under any of these other causes of action?

2   MR. COHEN:  I guess that's up to my counsel to argue.
3   Probably under the -- one of the counts -- probably the last
4   count.  He's got a count -- where's my list here.  He had a
5   wrongful termination, violation of public policy, I guess.  I'm
6   not saying he's not without remedy.  It's not within Fortune.

7   THE COURT:  I'm going to hold you to your word about
8   being brief.  Do you want to address the other cause of action?

9   MR. COHEN:  Yes, thankfully.  Delighted to.
02:39 10   So the other one is the tortious interference with
11   contract.  So, your Honor, you know what?  I'm going to
12   actually set my notes aside.  The law is very well-settled in
13   the Commonwealth, *Harrison* and the like, that an individual
14   cannot -- or a company can't tortiously interfere with its own
15   contract.  What the *Harrison* case says.

16   THE COURT:  I want to just see if there's a simpler
17   response on this.  Am I correct in understanding that the DA's
18   authority to hire and fire is by statute?

19   MR. COHEN:  It is.

02:39 20   THE COURT:  Why isn't that the beginning and end of
21   your argument?

22   MR. COHEN:  It is the beginning and the end of our
23   argument.  It's entirely -- DA Cruz has the complete and utter
24   authority, complete authority, to --

25   THE COURT:  But for some other reason that might be

1  illegal.

2  MR. COHEN:  Right.

3  THE COURT:  Race, sex, blah, blah, blah, blah.

4  MR. COHEN:  That's exactly right.  He is completely
5  vested with that authority.  He is the DA's office statutorily;
6  so, therefore, a claim can't exist against him for tortious
7  interference with the contract.

8  THE COURT:  I understand why you have the analogies to
9  corporations and the so forth.  But it seems like we're dealing
10 with a unique situation where you have a statutory appointment
11 authority.

12 MR. COHEN:  Well, it's unique in the sense that this
13 doesn't often happen.  But in this instance, he can only -- the
14 DA's office can only act through somebody, and that somebody is
15 the DA.  Thank you.

16 THE COURT:  Thank you.

17 MR. SINSHEIMER:  There's an irony in what I'm about to
18 say because I'm going to ask you not to dismiss a claim that I
19 very well might dismiss on the eve of trial.  The reason I'm
20 going to ask you not to dismiss it is -- boils down simply to
21 prematurity.

22 We've all grown into this custom where the alleged
23 facts come into all counts, and then you try to think of every
24 count that you can stuff in to make sure you don't lose any
25 remedies.  I didn't draft this complaint, but I think it's

```
 1   well-drafted.
 2            But as a trial lawyer, what I'm looking for is:  Do I
 3   have enough facts to state a claim?  And will those facts, if
 4   proven, allow the greatest amount of damages and consequential
 5   damages under the law?  It's pretty simple.  There's liability
 6   and there's damages.
 7            Now, if I heard my brother to concede that I can get
 8   the maximum damages under another count, then, frankly, I don't
 9   care whether you dismiss the Fortune count or not.  The labels
10   are irrelevant.  And at the same time, since my brother was
11   very, very cautious and actually said, That's up to Mr.
12   Sinsheimer, I don't want to be put to a label this early in the
13   case.  I want to preserve everything that's in the record to
14   get the maximum recovery available for my client.
15            Now, the good news.  The good news is it has nothing
16   to do with the law.  It has nothing to do with prongs.  It has
17   to do with the fact that John Bradley is out there working
18   again.
19            THE COURT:  Right.  We don't have an eight-year wait.
20   We have --
21            MR. SINSHEIMER:  No, we don't have an eight-year wait.
22   In two months he will probably be vested.  By the way,
23   parenthetically, you know the poor woman who's charged with
24   murdering her children because they -- she left them to die in
25   a closet in Worcester, that horrible, horrible case.  That's
```

1   John prosecuting it.  So if you turn on the TV, you'll see a
2   party before you acting as a very distinguished lawyer in
3   Worcester Superior Court.
4           So, hopefully, he's going to earn his way through to
5   vesting.  That's only two months from now, give or take.
6           THE COURT:  But there are really two different
7   questions here.  One is, assuming you prove liability on one of
8   your causes of actions, what are the damages, or in several --
9           MR. SINSHEIMER:  Right.
10          THE COURT:  -- of the causes of actions, what are the
11  damages.
12          MR. SINSHEIMER:  Correct.
13          THE COURT:  I understand that you are trying to
14  preserve the value of the delayed opportunity for the pension.
15          MR. SINSHEIMER:  Exactly, exactly.
16          THE COURT:  But the problem with trying to do it
17  through the Fortune method is that, if this pension claim
18  stands, so does every pension claim, and the courts --
19          MR. SINSHEIMER:  Which is why, more likely than not,
20  when we actually get to trial, I may look at what I have to
21  prove.  And don't forget, you're also requesting instructions
22  at that point in time.  You're really focusing on the elements
23  of what you need to prove.  It may go away.
24          But at least for now, I look at that *Shen* case that my
25  brother decided not to discuss, and it does suggest that you

|  |  |
|---|---|
| 1 | can prove Fortune claims -- it's a Judge Tauro decision, cited |
| 2 | in our brief. It's says, on Page 54, that you can prove a |
| 3 | Fortune claim on the public policy. I acknowledged in my brief |
| 4 | it might be duplicative. He cites another case. He cites a |
| 5 | Judge Skinner case. |
| 6 | Let me also say that my brother says it's Black Letter |
| 7 | Law that you can't recover for lost pension. That, |
| 8 | technically, I don't quite agree with because the phrasing is |
| 9 | not "pension." The phrasing is "future damages for future |
| 02:44 10 | work," as it correctly states. Your question was right on the |
| 11 | money. What would happen if it was the day before or the hour |
| 12 | before? And I think, if those facts were presented, the |
| 13 | Fortune claim would survive. |
| 14 | As far as the windfall element, that's -- frankly, I |
| 15 | think it's a better argument. I have to give them their due |
| 16 | but -- because this is the public sector. There's nothing that |
| 17 | says you can't prove a Fortune claim in the public sector. The |
| 18 | windfall is not going to go to Mr. Cruz. So if that's |
| 19 | dispositive, I lose. I'm not going to waste time arguing |
| 02:44 20 | something that's just not there. |
| 21 | But the technical argument is that Fortune has never |
| 22 | been excluded for pension cases a hundred percent. The better |
| 23 | answer was there is no case to -- as he said the second time, |
| 24 | not that it's Black Letter Law. |
| 25 | THE COURT: Yeah, but it is Black Letter Law, is it |

1   not, that what Fortune is trying to protect is what you have
2   earned so far, not what you hope to earn.
3         MR. SINSHEIMER: Correct. I agree with that totally.
4   But a pension is not what you hope to earn. A pension grows
5   day by day, second by second, minute by minute. It gets
6   back -- I mean, the real question -- the way we phrase it in
7   the brief -- it's obvious that the Court has read that very
8   carefully -- they timed it to hurt him the most. I really
9   believe I can prove that. And that means, you know, cut him
02:45 10  off right at the part where it would be legally most difficult
11  to achieve compensation.
12        So, truthfully, your Honor, at the end of the day, it
13  probably doesn't amount to a hill of beans, but I think the
14  safer approach is to keep it in the case at least through
15  summary judgment, see how the facts play out. I might not even
16  want it after that point. If you feel you have to dismiss it,
17  it's a matter of Black Letter Law, the four corners, I'm not
18  going to beat it to death. As far as the other one --
19        THE COURT: Yes.
02:46 20        MR. SINSHEIMER: That's a really, really interesting
21  question because I don't think Timothy Cruz is technically the
22  employer.
23        THE COURT: No. That's why I'm saying their analogy
24  to those other cases may not be that relevant. But he is the
25  appointing authority under the statute.

1          MR. SINSHEIMER:  Right.

2          THE COURT:  And he has -- if he doesn't have the

3  authority to interfere with this contract -- I would agree with

4  you that the employer is the government entity, not the

5  individual.  But he's the appointing authority.  And if he

6  doesn't have the authority -- if he can't essentially interfere

7  with this contract --

8          MR. SINSHEIMER:  I think I agree with that.  I think,

9  if it's decided -- which is their reply brief.  It wasn't the

02:46 10 brief I first responded to.  If it's decided on a purely

11 statutory basis, I don't know that I would have a big problem

12 with that.

13         But let me just -- this isn't really the issue raised

14 by this.  But I'm always concerned in this case.  This isn't

15 new to me where the Commonwealth itself is not a party because

16 they're the ones that write the check.  We plaintiff lawyers,

17 that's all we're ever really interested in.  I don't know.  I'm

18 sure I can work this out with Mr. Cohen.  He's very, very

19 collegial.  Whether we need to amend to name the Commonwealth.

02:47 20 I know, as a matter of practice, that the Attorney General's

21 Office actually prefers it to be the other way.  They treat the

22 agencies as separate clients, but I don't know if there's any

23 real authority.  I was surprised not to see it because I raised

24 it.  I don't know if they know there's any real authority, the

25 DA's office is truly an entity.  They could sue or be sued.

1          Yeah, they hit me with the statutory thing in the
2   reply brief, and I don't have a real problem with that.  All
3   I'm really doing in the secondary portion is flagging an issue.
4   There has to be an entity who is the employer, who is not Mr.
5   Cruz individually.  That's why we opposed it, because Mr. Cruz,
6   if there is a judgment, isn't going to be the one who pays it.
7          THE COURT:  No.  I -- it seems to me that this further
8   question of is he the employer, is he not the employer, I don't
9   need to reach it.
10         MR. SINSHEIMER:  You don't.
11         THE COURT:  The threshold question is the appointing
12  authority and --
13         MR. SINSHEIMER:  Excuse me.
14         THE COURT:  I think that's the threshold question.  I
15  don't see -- if you are right, I don't see how that statute
16  could have any validity if they can't appoint and fire.  So I
17  think that blocks that claim.
18         With regard to amending your complaint, I don't --
19  that's not something that's teed up here.
20         MR. SINSHEIMER:  Understood.
21         THE COURT:  I think, if you are interested -- I don't
22  know where we are on the scheduling order.  But assuming we
23  haven't passed the time for amending the pleadings, then I
24  would suggest you confer and decide where you're going to go.
25  And if you are seeking to add a party that is not a party here

Case 1:13-cv-12927-IT   Document 52   Filed 12/18/14   Page 19 of 20

19

1  to remember to comply with the local rule that you have to
2  serve them first.
3       MR. SINSHEIMER:  Well, you know, Mr. Cohen has been
4  appointed Special Attorney General.  I'm not sure the Court is
5  aware of that.  That's always true in these kinds of situations
6  where the Commonwealth gets itself outside counsel.  I think we
7  can work it out.  If we can't, I'll move to amend.  It's really
8  not about whether the actions were different.  We -- enough
9  said for now.
02:49 10       MR. COHEN:  Do you have any questions, your Honor?
11       THE COURT:  I don't think so.  So unless there's
12  anything further --
13       MR. COHEN:  No.  I think I'll take my cue and sit
14  down.  Okay.
15       THE COURT:  Thank you.
16       MR. COHEN:  Thank you, your Honor.  Thank you for your
17  time.  Thank you.
18       THE CLERK:  Court is in recess.  All rise.
19  (Whereupon, at 2:50 p.m. the hearing concluded.)
20
21
22
23
24
25

C E R T I F I C A T E

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter to the best of my skill and ability.

/s/Cheryl Dahlstrom          December 1, 2014
Cheryl Dahlstrom, RMR, CRR   Dated
Official Court Reporter