# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____
)
JOHN BRADLEY, )
)
       Plaintiff, )    Civil Action No. 1:13-cv-12927-IT
v. )
)
TIMOTHY J. CRUZ (Individually), )
MICHAEL HORAN (Individually), )
FRANK J. MIDDLETON (Individually), )
AND THE OFFICE OF THE DISTRICT )
ATTORNEY FOR PLYMOUTH )
COUNTY, )
)
       Defendants. )
_____)

## DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, Defendants Timothy J. Cruz ("D.A. Cruz" or the "D.A."), Michael Horan, Frank J. Middleton, and the Office of the District Attorney for Plymouth County ("District Attorney's Office") (together the "Defendants"), respectfully submit the following statement of material facts of record as to which there is no genuine issue to be tried. All documents cited herein are appended to the accompanying Declaration of Robert O. Sheridan ("Sheridan Decl.") and are hereinafter designated as Ex. [] to Sheridan Decl.:

## FACTS[1]

### I. THE PARTIES

1. In November 2001, Governor Jane Swift appointed D.A. Cruz. (*See* Biography of District Attorney Cruz, available at: http://www.mass.gov/daplymouth/meettheda.html (last

---

[1] Defendants include some background facts, while not directly relevant to summary judgment, for the purpose of context.

visited December 23, 2015).)

2. The Plymouth County voters elected D.A. Cruz in 2002, and re-elected him in 2006, 2010, and 2014. (*See* Candidate Profile, available at:

http://electionstats.state.ma.us/candidates/view/Timothy-J-Cruz (last visited December 23, 2015).)

3. Mr. Middleton resides in Marshfield, Plymouth County, Massachusetts. (Docket Nos. 1 at ¶ 4; 12 at ¶ 4.)

4. Mr. Horan resides in Marshfield, Plymouth County, Massachusetts. (Docket Nos. 1 at ¶ 3; 12 ¶ 3.)

## II. MR. BRADLEY'S TIME WITH THE PLYMOUTH COUNTY DISTRICT ATTORNEY'S OFFICE.

5. In 1991, Mr. Bradley graduated from Georgetown University Law Center. (John Bradley Resume[2/].)

6. In July 1991, Mr. Bradley took the bar for the first time and failed. (John Bradley Deposition Transcript Volume I ("Bradley Dep. Tr. Vol. I")[3/] 11:5-15.)

7. In February 1992, Mr. Bradley took the bar for the second time and passed. (Bradley Dep. Tr. Vol. I 11:5-15—Ex. 2.)

8. In October 1991, Mr. Bradley joined the District Attorney's Office. (Bradley Dep Tr. Vol. I 13:14-21—Ex. 2.)

9. In 2001, Mr. Bradley left the District Attorney's Office to join the U.S. Attorney's Office. (Bradley Dep. Tr. Vol. 1 22:15-18—Ex. 2.)

---

[2/] A copy of Mr. Bradley's resume is attached as Ex. 1 to the Sheridan Decl.

[3/] Excerpts from the Bradley Dep. Tr. Vol. I are attached as Ex. 2 to the Sheridan Decl.

10. In April 2003, Mr. Bradley left the U.S. Attorney's Office to return to the District Attorney's Office. (Bradley Dep. Tr. Vol. I 24:15-17—Ex. 2.).

11. Mr. Bradley and Mr. Middleton used to be close friends, but over time it was generally observed in the office that their relationship soured. (Thomas Flanagan Deposition Transcript ("Flanagan Dep. Tr.")[4/] 10:4-13; 25:8-24.)

12. Indeed, by 2006, Mr. Bradley, for all practical purposes, stopped speaking to Mr. Middleton. (Frank Middleton Deposition Transcript ("F. Middleton Dep. Tr.")[5/] 153:4-7; Sharon Donatelle Deposition Transcript ("Donatelle Dep. Tr.")[6/] 42:16-21; Flanagan Dep. Tr. 10:4-13.)

13. By 2011, notwithstanding the fact that Mr. Bradley's relationships with the D.A. and Mr. Middleton devolved, Mr. Bradley continued to be the Deputy First Assistant and Chief District Court Prosecutor. (Docket Nos. 1 at ¶ 8; 12 at ¶¶ 8, 11; Flanagan Dep. Tr. 10:4-13—Ex. 3; Timothy J. Cruz March 25, 2015 Deposition Transcript ("Cruz. Mar. 25 Dep. Tr.")[7/] 177:14-21; Michael Horan Deposition Transcript ("Horan Dep. Tr.")[8/] 59:12-21.)

14. Notwithstanding Mr. Bradley's relatively high status positions he demonstrated disrespect for Mr. Cruz, his policies, and the District Attorney's Office itself. For example, in January 2011, Mr. Bradley did not participate in a senior staff meeting and was witnessed rolling his eyes outside the doorway while the D.A. reviewed office policies with his staff. (Donatelle Dep. Tr. p. 57:14-59:2—Ex. 5; Christine Kiggen Deposition Transcript ("Kiggen Dep. Tr.") [9/]

---

[4/] Excerpts from the Flanagan Dep. Tr. are attached as Ex. 3 to the Sheridan Decl.

[5/] Excerpts from the F. Middleton Dep. Tr. are attached as Ex. 4 to the Sheridan Decl.

[6/] Excerpts from the Donatelle Dep. Tr. are attached as Ex. 5 to the Sheridan Decl.

[7/] Excerpts from the Cruz Mar. 25 Dep. Tr. are attached as Ex. 6 to the Sheridan Decl.

[8/] Excerpts from the Horan Dep. Tr. are attached as Ex. 7 to the Sheridan Decl.

[9/] Excerpts from the Kiggen Dep. Tr. are attached as Ex. 8 to Sheridan Decl.

15:18-16:3.)

15. In January 2011, Mr. Bradley also sent a disrespectful email about D.A. Cruz to a fellow prosecutor stating "[t]hat was our wimp of a D.A. trying to provide some cover for our crazy first assistant. . ." (John Bradley Deposition Transcript Volume II ("Bradley Dep. Tr. Vol. II")[10/] 190:5-15; Dep. Ex. 23[11/].)

16. An issue arose regarding the manner in which the judiciary was handling jury-waived OUI cases in the district courts. (Bradley Dep. Tr. Vol. II 87:16-88:7.) As part of addressing this matter, D.A. Cruz and the District Attorney's Office initially authorized Mr. Bradley to discuss issues related to OUIs with the *Boston Globe*. (Bradley Dep. Tr. Vol. II 98:13-100:17, 99:14-100:4; Cruz Mar. 25 Dep. Tr. 159:24-160:7—Ex. 6.)

17. D.A. Cruz decided who in the District Attorney's Office dealt with the press and his instructions on this matter were to be followed. (Bradley Dep. Tr. Vol. I1 105:14-23—Ex. 9.)

18. Bridget Middleton was largely responsible for dealing with the press at the District Attorney's Office. (Bradley Dep. Tr. Vol. II 105:9-13—Ex. 9.)

19. On November 17, 2011, the *Boston Globe* contacted Mr. Bradley. (J.Bradley to T.Cruz November 17, 2011 email[12/] (hereinafter referred to as the "November 17, 2011 email" or the "I am not your child email"); Cruz Mar. 25 Dep Tr. 168:12-19.)

20. On November 17, 2011, Mr. Bradley emailed the following to D.A. Cruz:

---

[10/] Excerpts from the Bradley Dep. Tr. Vol. II are attached as Ex. 9 to the Sheridan Decl. HIGHLY CONFIDENTIAL portions of this transcript are attached as Ex. 9A to the Sheridan Decl. and are redacted.

[11/] Deposition Ex. 23 is attached as Ex. 10 to the Sheridan Decl.

[12/] The "I am not your child email" is attached as Ex. 11 to the Sheridan Decl.

> Got a call from the Globe asking what we are going to do, moving forward, on the jury waived/oui issue. I mentioned that we were considering asking for declination on all oui jury waivers in cases involving Barett, Mooney, Gilligan, and Minehan. If you agree to this, they will run a front page story. Personally, I feel we are remiss if we don't do this, press coverage notwithstanding.

("November 17, 2011 email"—Ex. 11.)

21. D.A. Cruz was out of town attending a conference when he received this email. (Kendra Salvatore Deposition Transcript ("Salvatore Dep. Tr.")[13] 35:22-36:10; Cruz Mar. 25 Dep. Tr. 168:12-19—Ex. 6.)

22. The D.A. replied to Mr. Bradley's email with the following statement: "I am deciding what I will do with this when I get back. No more contact with [the *Boston Globe*] until I say so." ("November 17, 2011 email"—Ex. 11.)

23. D.A. Cruz—the elected official in the District Attorney's Office—had plenary authority over "who dealt with the press." (Bradley Dep. Tr. Vol I 105:14-23—Ex. 2.) And indeed, Mr. Bradley testified that if the D.A. "tells you not to talk to the press about a particular matter, you should follow that instruction." (Bradley Dep. Tr. Vol I 105:14-23—Ex. 2.)

24. Yet, Mr. Bradley stated in response to D.A. Cruz's instruction not to speak to the press: "I am not your child. I have done a lot of important work in this office both before and after you became D.A. . . . You can start showing me a little more respect." ("I am not your child email"—Ex. 11.)

25. Kendra Salvatore, Mr. Cruz's Administrative Assistant, has access to D.A. Cruz's email and immediately saw the "I am not your child" email when it reached his inbox. (Salvatore Dep. Tr.81:19-82:13—Ex. 12.)

26. Ms. Salvatore testified that she was "shocked" when she saw the "I am not your

---

[13] Excerpts from the Salvatore Dep. Tr. are attached as Ex. 12 to the Sheridan Decl.

child" email because it was very disrespectful. (Salvatore Dep. Tr. 82:9-83:13—Ex. 12.)

27. Pursuant to G.L. c. 12, § 16, Mr. Bradley served as an Assistant District Attorney at the pleasure of D.A. Cruz. This section provides: "Each district attorney shall, subject to appropriation and subject to the conditions of this section, appoint and may, at his pleasure, remove such assistant district attorneys as are necessary to the functioning of the office of the district attorney. . ." G.L. c. 12, § 16.

28. The moment D.A. Cruz received the "I am not your child email" he decided that Mr. Bradley could no longer work in the District Attorney's Office because of Mr. Bradley's level of disrespect for D.A. Cruz and the District Attorney's Office. (Cruz Mar. 25 Dep. Tr. 167:20-168:3—Ex. 6.)

29. D.A. Cruz alone made the decision to terminate Mr. Bradley, and he did so "pretty much the moment that [he] got the 'I am not your child' e-mail" and "when [Mr. Bradley] didn't resign as he said he would at our meeting on or about November 21 of 2011." (Cruz Mar. 25 Dep Tr. 149:7-12; 150:7-13—Ex. 6; Timothy J. Cruz August 3, 2015 Deposition Transcript ("Cruz Aug. 3 Dep. Tr.")[14/] 234:2-11.)

30. On November 21, 2011, when the D.A. returned to the office, Mr. Bradley and D.A. Cruz met because of the "I am not child email." ("November Meeting"). (Cruz Mar. 25 Dep. Tr. 150:10-13; 168:7-19—Ex. 6.)

31. During the November Meeting, D.A. Cruz told Mr. Bradley words to the effect: "[Y]ou're obviously not happy here so why are you here?" Bradley did not disagree, nor did he apologize for the "I'm not your child email". (Cruz Mar. 25 Dep. Tr. 168:20-169:4—Ex. 6; Bradley Dep. Tr. Vol. 1 141:10-16—Ex. 2.)

---

[14/] Excerpts from the Cruz Aug. 3 Dep. Tr. are attached as Ex. 13 to the Sheridan Decl.

32. Mr. Bradley admitted that the tenor of the November Meeting concerned his future at the District Attorney's Office. (Bradley Dep. Tr. Vol. I 167:20-170:1—Ex. 2.)

33. Mr. Bradley discussed with D.A. Cruz finishing two long-pending homicide cases—*Commonwealth v. Caswell*, No. PLCR2009-00421[15/] ("*Caswell*") and *Commonwealth v. Winquist*, No. PLCR2007-00531[16/] ("*Winquist*"). Both of these matters were scheduled for trial shortly after the November Meeting. (Bradley Dep. Tr. Vol. I 142:6-21; 167:15-168:3—Ex. 2; Bradley Dep. Vol. II 150:2-21—Ex. 9.)

34. D.A. Cruz determined that Mr. Bradley's continued participation in these cases would be in the best interest of both the victims' families and the Commonwealth. (Bradley Dep. Tr. Vol. I 142:6-21—Ex. 2; Cruz Mar. 25 Dep. Tr. 169:5-171:11—Ex. 6; Salvatore Dep. Tr. 86:5-15—Ex. 12.)

35. Immediately after the November Meeting, D.A. Cruz told Ms. Salvatore, words to the effect "that John [Bradley] agreed to resign after he finished two homicide cases that were still pending." (Salvatore Dep. Tr. 86:5-15—Ex. 12; Cruz Mar. 25 Dep. Tr. 170:20-171:11—Ex. 6; Bradley Dep. Tr. Vol. I 142:6-21—Ex. 2.)

36. In January 2012, D.A. Cruz officially relieved Mr. Bradley of his responsibilities as Chief District Court Prosecutor. (Bradley Dep. Tr. Vol. I 40:16-41:1—Ex. 2; Bradley Dep. Tr. Vol. II 148:13-149:16—Ex. 9; Cruz Mar. 25 Dep. Tr. 87:24-88:8; 171:13-172:6—Ex. 6.)

37. Mr. Bradley's salary did not decrease after he was relieved of his district court supervisory responsibilities in January 2012. (Bradley Dep. Tr. Vol. I 153:4-11—Ex. 2.) He remained the fourth highest paid individual in the office until his employment was terminated.

---

[15/] A copy of the *Caswell* docket is attached as Ex. 14 to the Sheridan Decl.

[16/] A copy of the *Winquist* docket is attached as Ex. 15 to the Sheridan Decl.

(*Id.*)

38. On January 4, 2012, Mr. Bradley's disrespectful behavior continued, as Mr. Bradley sent an email to Ms. Salvatore (D.A. Cruz's Assistant) asking her to "tell the D.A. I've already given myself a congratulatory pat on the back for the *Caswell* conviction; so he need not expend extra energy by offering any kind words! I know how busy and important he is . . ." (J.Bradley to K.Salvatore January 4, 2012 email[17].)

39. Although the *Caswell* case proceeded as scheduled, the *Winquist* matter was continued three times after the November Meeting. The *Winquist* trial did not conclude until September 25, 2012. (*See Caswell* docket—Ex. 14 and *Winquist* docket—Ex. 15.)

40. For Mr. Bradley's last ten months at the District Attorney's Office, Mr. Bradley admitted that the *Winquist* matter was essentially his only responsibility. (Bradley Dep. Tr. Vol. II. 150:2-12—Ex. 9.)

41. On September 28, 2012, after the November Meeting, Mr. Bradley's removal from district court duties, the conclusion of the *Caswell* matter, and only three days after the *Winquist* matter ended, Mr. Horan agreed to remind Mr. Bradley that his time with the District Attorney's Office was over. (Horan Dep. Tr. 59:2-63:18—Ex. 7.)

42. D.A. Cruz asked Mr. Horan to deliver this message because Mr. Horan and Mr. Bradley had been friends for over 20 years. (Horan Dep. Tr. 59:12-21; 61:17-62:1—Ex. 7; Bradley Dep. Tr. Vol. II 59:4-10—Ex. 9.)

43. On September 28, 2012, D.A. Cruz asked Mr. Middleton to leave the office early. (F. Middleton Dep. Tr. 140:21-141:15—Ex. 4.)

44. On September 28, 2012, Mr. Bradley refused to resign and in fact told Mr. Horan

---

[17] A copy of the J.Bradley to K.Salvatore January 4, 2012 email is attached as Ex. 16 to the Sheridan Decl.

words to the effect that "his goal in life was to destroy [D.A.] Cruz's career." (Bradley Dep. Tr. Vol. I 169:22-170:14—Ex. 2; Horan Dep. Tr. 59:22-61:7—Ex. 7.)

45. When Mr. Bradley refused to resign, Mr. Horan informed him that his employment was terminated. (Bradley Dep. Tr. Vol. I 169:22-170:16—Ex 2; Horan Dep. Tr. 59:2-63:18—Ex. 7.)

46. Mr. Bradley admits that Mr. Horan did not play a role his termination. (Bradley Dep. Tr. Vol. II 58:23-59:3; 156:23-157:10—Ex. 9.)

47. Efforts were made to help Mr. Bradley find comparable employment. For example, D.A. Cruz spoke to Worcester County District Attorney Joseph Early ("D.A. Early") about finding Mr. Bradley a place in the Worcester District Attorney's Office—where he currently works. (Cruz Mar. 25 Dep. Tr. 176:12-177:21—Ex. 6.)

48. On September 28, 2012, Mr. Horan communicated this offer to Mr. Bradley, but Mr. Bradley refused the offer and in fact, told Mr. Horan that he did not want D.A. Cruz speaking to any other district attorneys' offices on his behalf. (Horan Dep. Tr. 59:22-61:7; 69:1-71:14—Ex. 7.)

49. D.A. Cruz continued to offer to help Mr. Bradley find a position after he terminated Mr. Bradley's employment, and even after Mr. Bradley threatened a lawsuit.[18] But Mr. Bradley never accepted these offers of help. (Horan Dep. Tr. 59:22-61:7—Ex. 7.)

### III. THERE IS NO CONNECTION BETWEEN EMPLOYEES' CONTRIBUTION ACTIVITY AND EMPLOYMENT SUCCESS AT THE DISTRICT ATTORNEY'S

---

[18] Bradley Deposition Ex. 20—a copy of a B. Cohen to B. Robb July 1, 2013 letter is attached as Ex. 17A to the Sheridan Decl. Bradley Deposition Ex. 21—a copy of a B. Cohen to B. Robb August 26, 2013 letter is attached as 17B to the Sheridan Decl.

**OFFICE.**

50. All contributions to D.A. Cruz's campaign are publicly available on the Massachusetts Office of Campaign and Political Finance website. (*See* The Massachusetts Office of Campaign & Political Finance, available at: http://www.ocpf.us/Home/Index (last visited January 6, 2016).)

51. From 2005 to 2007, Mr. Bradley contributed $500 each year to D.A. Cruz's campaign. According to the Massachusetts Office of Campaign and Political Finance, he did not contribute in 2008. In 2009, Mr. Bradley made a final $500 contribution to D.A. Cruz's campaign. (*See* Massachusetts Office of Campaign and Political Finance, available at: http://www.ocpf.us/Reports/SearchItems (last visited January 5, 2016).)

52. Mr. Bradley never once spoke to D.A. Cruz, Mr. Horan, or Mr. Middleton about his decision not to contribute to Mr. Cruz's political campaign. (Bradley Dep. Tr. Vol. I 82:19-24; 101:2-11; 106:23-107:4—Ex. 2.)

53. Mr. Horan never told Mr. Bradley that the employees were expected to contribute to D.A. Cruz's campaign. (Horan Dep. Tr. 112:15-18—Ex. 7.)

54. Mr. Bradley has no personal knowledge that Mr. Middleton played a role in any employee's financial or professional future tied to contributions. (Bradley Dep. Tr. Vol. I 117:20-118:10—Ex. 2.)

55. Mr. Bradley has no firsthand knowledge as to whether or not D.A. Cruz monitored employees' contributions. (Bradley Dep. Tr. Vol. I 133:4-13—Ex. 2.)

56. D.A. Cruz never told Mr. Bradley that political contributions were important to his employment at the District Attorney's Office. (Bradley Dep. Tr. Vol. I at 46:16-20; 85:15-22—Ex. 2.)

57. Mr. Bradley never once confronted D.A. Cruz about Mr. Bradley's belief that he was retaliated against for failing to participate in election activities. (Bradley Dep. Tr. Vol. I at 82:19-24, 85:15-22—Ex. 2.)

58. The objective facts support the D.A.'s contention that political contributions played no role in employment experience of anyone in the District Attorney's Office. For example, A.D.A. Susan Dunleavy McDonough, an attorney with the District Attorney's Office, was hired in June 2003, and never once contributed to D.A. Cruz's campaign. Ms. McDonough nevertheless received one $1,000 bonus, and eight salary increases. Moreover, in 2012, D.A. Cruz promoted Ms. McDonough to Deputy Chief of the Family Protection Unit. (Affidavit of Donna Cruise[19/] ("Cruise Aff.") at ¶ 4; *See* The Massachusetts Office of Campaign & Political Finance, available at: http://www.ocpf.us/Home/Index (last visited January 6, 2016).)

59. A.D.A. Amanda Fowle, an attorney with the District Attorney's Office, was hired in February 2011, never once contributed to the campaign, and received one $1,000 bonus and one salary increase since 2012. (Cruise Aff. at ¶ 5—Ex. 18; *See* The Massachusetts Office of Campaign & Political Finance, available at: http://www.ocpf.us/Home/Index (last visited January 6, 2016).)

60. Mary Glavin, a Victim Witness Advocate with over 25 years of tenure in the District Attorney's Office, was hired in November 1985, received four salary increases and one bonus during D.A. Cruz's tenure, despite only contributing to D.A. Cruz's campaign once in 2008 in the amount of $100. (Cruise Aff. at ¶ 6—Ex. 18; (*See* The Massachusetts Office of Campaign & Political Finance, available at: http://www.ocpf.us/Home/Index (last visited January 6, 2016).)

---

[19/] A copy of the Cruise Aff. is attached as Ex. 18 to the Sheridan Decl.

61. AD.A. Karen O'Sullivan, who is an affiant for Mr. Bradley, was hired in February 1996. During D.A. Cruz's tenure she received nine salary increases and three bonuses even though she did not contribute in 2010 or 2012. (Cruise Aff. at ¶ 7—Ex.8; *See* The Massachusetts Office of Campaign & Political Finance, available at: http://www.ocpf.us/Home/Index (last visited January 6, 2016).)

62. Sharon Donatelle and Thomas Flanagan both testified that they never felt pressured to contribute to D.A. Cruz's campaign. (*See e.g.*, Donatelle Dep. Tr. 67:4-7—Ex. 5; Flanagan Dep. Tr. 80:18-81:3—Ex. 3.)

### IV. THE SINGLE DOCUMENT MR. BRADLEY SUGGESTS SUPPORTS HIS CLAIMS DOES NOT ACTUALLY SUPPORT THEM.

63. Mr. Bradley believes that a document stating "[i]t is well know[n] that JB and KO sat out purposefully" supports his claim that he was fired for non-contribution. (Ex. 1 to Donatelle Dep.[20]; Bradley dep. Tr. Vol. II 74:12-19—Ex. 9.)

64. The phrase "sat out" does *not*, however, refer to campaign contributions and instead refers to Bradley's decision not to "sit in on a *meeting*." (Donatelle Dep. Tr. 57:14-59:2; 66:11-20—Ex. 5 (emphasis added).)

65. Not only did Mr. Bradley not attend this meeting, he was witnessed rolling his eyes at the attorneys who did attend. (Kiggen Dep. Tr. 15:18-16:3—Ex. 8.)

### V. DEFENDANTS DID NOT ACT WITH MALICE, BUT INSTEAD ACTED IN THE LEGITIMATE CORPORATE INTERESTS OF THE PLYMOUTH COUNTY DISTRICT ATTORNEY'S OFFICE.

66. Mr. Bradley's salary did not decrease after he was relieved of his district court supervisory responsibilities in January 2012. (Bradley Dep. Tr. Vol. I 153:4-11—Ex. 2.) He remained the fourth highest paid individual in the office until his employment was terminated.

---

[20] A copy of Donatelle Dep. Ex. 1 is attached as Ex. 19 to the Sheridan Decl.

*Id.*

67. D.A. Cruz permitted Mr. Bradley to finish the two homicide cases that were pending before D.A. Cruz terminated Mr. Bradley's employment. (Salvatore Dep. Tr. 86:5-15—Ex. 12; Cruz Mar. 25 Dep. Tr. 170:20-171:11—Ex. 6; Bradley Dep. Tr. Vol. I 142:6-21—Ex. 2.)

68. The D.A. allowed Mr. Bradley to finish these cases because it was in the best interest of the Commonwealth and the families of the victims. (Salvatore Dep. Tr. 86:5-15—Ex. 12; Cruz Mar. 25 Dep. Tr. 170:20-172:6—Ex. 6; Bradley Dep. Tr. Vol. I 142:6-21—Ex. 2.)

69. D.A. Cruz asked Mr. Horan to remind Mr. Bradley that his time at the District Attorney's Office was over because Mr. Horan and Mr. Bradley had been friends for 20 years. (Horan Dep. Tr. 59:12-21; 61:17-62:1—Ex. 7; Bradley Dep. Tr. Vol. II 59:4-10—Ex. 9.)

70. Efforts were made to help Mr. Bradley find comparable employment. For example, D.A. Cruz spoke to D.A. Early about finding Mr. Bradley a place in the Worcester District Attorney's Office—where he currently works. (Horan Dep. Tr. 59:21-60:16—Ex. 7.)

## VI. MR. BRADLEY DID NOT BLOW THE WHISTLE ON ANYTHING RELATED TO JURY-WAIVED TRIALS CONCERNING MOTOR VEHICLE DRIVERS OPERATING UNDER THE INFLUENCE ("OUIS").

71. Mr. Bradley does not allege that D.A. Cruz was somehow engaged in corruption surrounding OUIs, nor does Mr. Bradley allege that D.A. Cruz was rigging the system so that defendants would get out of the crimes associated with OUI. (Bradley Dep. Tr. Vol. II 89:2-90:12; 92:19-23—Ex. 9.)

72. Mr. Bradley was concerned with how the judiciary was handling these jury-waived OUI cases. (Bradley Dep. Tr. Vol. II 90:13-19—Ex. 9.)

73. In 2008, D.A. Cruz discussed these OUI issues with Mr. Bradley and Mr. Horan. (Bradley Dep. Tr. Vol. I 94:11-96:2—Ex. 2.)

74. D.A. Cruz asked Mr. Bradley and Mr. Horan to go down to the Wareham

13

district court and talk to the presiding justice about the issue. (Bradley Dep. Tr. Vol. I 149:8-22—Ex. 2.)

75. Bradley and Mr. Horan met with the presiding judge in the Wareham district court to discuss the OUI issue. (Bradley Dep. Tr. Vol. II 94:11-96:2—Ex. 9; Bradley Dep. Tr. Vol. I 149:8-150:4—Ex. 2.)

76. Mr. Bradley did not believe that this meeting was intended to "quash" his concerns. In fact, Mr. Bradley testified that he thought the meeting was a "positive step" in addressing his OUI concerns. (Bradley Dep. Tr. Vol. II 96:3-6—Ex. 9.)

77. In 2010, D.A. Cruz spearheaded an effort to address the OUI acquittal rate by working with the state legislature to try to close loop holes to the existing OUI law. Indeed, in early 2011, D.A. Cruz endorsed legislation that attempted to close these loop holes *before* the *Boston Globe* reached out for comment on the OUI statistics. (B.Middleton to R.Thompson December 14, 2010 email[21]; B.Middleton to J.Bradley March 15, 2011 email[22].)

78. D.A. Cruz's press office provided the *Boston Globe* with the requested information and set up interviews with staff including Mr. Bradley. (Bradley Dep. Tr. Vol. II 98:13-100:17—Ex. 9.)

79. Mr. Bradley spoke with the *Boston Globe* at a meeting suggested and scheduled by the press office for the District Attorney's Office. (Cruz Mar. 25 Dep. Tr. 159:24-160:7—Ex. 6; Bradley Dep. Tr. Vol. II 99:14-100:4—Ex. 9.)

80. Bridget Middleton was largely responsible for dealing with the press at the

---

[21] B. Middleton to R. Thompson December 14, 2010 email is attached as Ex. 20 to the Sheridan Decl.

[22] B. Middleton to J. Bradley March 15, 2011 email is attached as Ex. 21 to the Sheridan Decl.

District Attorney's Office. (Bradley Dep. Tr. Vol. II 105:9-13—Ex. 9.)

81. D.A. Cruz decided who in the District Attorney's Office dealt with the press and his instructions on this matter were to be followed. (Bradley Dep. Tr. Vol. I1 105:14-23—Ex. 9.)

### VII. MR. BRADLEY DID NOT DISCLOSE HIS ALLEGED CONCERNS ABOUT COOPERATING WITNESSES.

82. Mr. Bradley never disclosed his concerns about cooperating witnesses to D.A. Cruz. (Bradley Dep. Tr. Vol. II 112:9-16; 135:9-15—Ex. 9.)

83. The use of cooperating witnesses is a "normal tool" for prosecuting homicides. (Bradley Dep. Tr. Vol. II 111:10-18—Ex. 9.)

84. Indeed, it is possible that cooperating witnesses Mr. Bradley used as a prosecutor may have committed crimes after testifying and he indicated that it "probably happens more than anyone would like." (Bradley Dep. Tr. Vol. II 112:4-8; 113:21-114:3—Ex. 9.)

85. Nevertheless, Mr. Bradley testified to one particular cooperating witness as the exemplar of his whistleblowing claims concerning the cooperating witness practices of the District Attorney's Office. (HIGHLY CONFIDENTIAL Bradley Dep. Tr. Vol. II 118:14-119:21—Ex. 9A.)

86. Mr. Bradley testified that this individual represented a "major risk" for the office because he had allegedly "commit[ed] a series crimes while he was out on bail" and while he received benefits from the office. (HIGHLY CONFIDENTIAL Bradley Dep. Tr. Vol. II 118:14-119:21—Ex. 9A.)

87. Mr. Bradley further testified that this individual caused a great deal of controversy in the District Attorney's Office and he considered the practices towards cooperating witnesses like this individual "utterly reckless." (HIGHLY CONFIDENTIAL Bradley Dep. Tr. Vol. II 118:20-120:20—Ex. 9A.)

88. Mr. Bradley himself actually signed the memorandum of understanding related to the cooperating witness about whom he raises allegations.[23/]

89. Mr. Bradley was not forced to sign the memorandum of understanding. (HIGHLY CONFIDENTIAL Bradley Dep. Tr. Vol. II 132:9-23—Ex. 9A).

90. Mr. Bradley could have refused to sign the memorandum of understanding. (HIGHLY CONFIDENTIAL Bradley Dep. Tr. Vol. II 133:18-134:4—Ex. 9A.)

91. Mr. Middleton did not tell Mr. Bradley when to use cooperating witnesses or who to use. (Bradley Dep. Tr. Vol. II 125:1-10—Ex. 9.)

92. Mr. Bradley also questions Mr. Middleton's approval for "the use of taxpayer money to post bail" for another cooperating witness. (HIGHLY CONFIDENTIAL Bradley Dep. Tr. Vol. II 114:11-24—Ex. 9A.)

93. But Mr. Bradley does not know if this amount was eventually reimbursed to the state as is the normal practice when the individual appears in court. (HIGHLY CONFIDENTIAL Bradley Dep. Tr. Vol. II 116:9-12—Ex. 9A.)

94. This cooperating witness about whom Mr. Bradley complains testified at a trial that resulted in a murder conviction. (HIGHLY CONFIDENTIAL Bradley Dep. Tr. Vol. II 116:21-24—Ex. 9A.)

## CONCLUSION

95. Mr. Bradley experienced adverse employment action for no other reason than his openly disrespectful and insubordinate behavior. D.A. Cruz testified that he terminated Mr. Bradley's employment because of the "I am not your child email," and the disrespect Mr. Bradley displayed towards the District Attorney's Office and D.A. Cruz. (Cruz Mar. 25 Dep Tr. 149:7-12;

---

[23/] Bradley Dep. Tr. Ex. 17—the Witness Protection Petition Memorandum of Understanding, signed by Mr. Bradley is attached as Ex. 22 to the Sheridan Decl. (HIGHLY CONFIDENTIAL-REDACTED).

150:7-13; 167:24-168:3.)

96. D.A. Cruz testified that he did not terminate Mr. Bradley's employment because of political contributions or whistleblowing activities. (Cruz Mar. 25 Dep. Tr. 142:14-19.)

Respectfully Submitted,

**TIMOTHY J. CRUZ, MICHAEL HORAN, FRANK J. MIDDLETON, and the OFFICE OF THE DISTRICT ATTORNEY FOR PLYMOUTH COUNTY**

By their attorney,

**MAURA HEALEY
ATTORNEY GENERAL**

By: */s/ Bret A. Cohen*
Bret A. Cohen
Special Assistant Attorney General
BBO # 637830
Robert Sheridan
Special Assistant Attorney General
BBO # 673829
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
BCohen@mintz.com
RSheridan@mintz.com

*Attorneys for Defendants Timothy J. Cruz, Michael Horan, Frank J. Middleton, and the Office of the District Attorney for Plymouth County*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system on February 11, 2016 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Bret A. Cohen*
Bret A. Cohen