_____
)
JOHN BRADLEY,                                      )
)
       Plaintiff,                                )          Civil Action No. 1:13-cv-12927-IT
v.                                                 )
)
TIMOTHY J. CRUZ (Individually),                    )
MICHAEL HORAN (Individually),                      )
FRANK J. MIDDLETON (Individually),                 )
AND THE OFFICE OF THE DISTRICT                      )
ATTORNEY FOR PLYMOUTH                               )
COUNTY,                                             )
)
       Defendants.                               )
_____)

**DEFENDANTS' RESPONSE TO PLAINTIFF'S L.R. 56.1 OMNIBUS FILING ASSERTING DISAGREEMENTS WITH DEFENDANTS' ALLEGED AGREED UPON FACTS AND ASSERTING ADDITIONAL FACTS SUBJECT TO PROOF BY COMPETENT EVIDENCE**

      Pursuant to Local Rule 56.1, Defendants Timothy J. Cruz ("D.A. Cruz" or the "D.A."),

Michael Horan, Frank J. Middleton, and the Office of the District Attorney for Plymouth County

("the Office") (together the "Defendants"), respectfully submit the following response to

Plaintiff's Omnibus Statement.

### OBJECTION TO STATEMENT OF ADDITIONAL FACTS

      Portions of Plaintiff's Omnibus Statement do not comply with L.R. 56.1.  Pursuant to that

Rule,

> Opposition to motions for summary judgment shall include a concise statement of the
> material facts of record as to which it is contended that there exists a genuine issue to be
> tried, with page references to affidavits, depositions and other documentation.

(L.R. 56.1.)  Many of Plaintiff's additional facts do not contain "page references to affidavits,

depositions and other documentation," but instead include advocacy and argument apparently

in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment.  For example,

¶¶ 94-101 of Plaintiff's Omnibus Statement do not appear to be facts at all, but rather an argumentative narrative introduction to the next section of the Omnibus Statement. Defendants' respectfully request that the Court strike or disregard these paragraphs because they do not comply with Local Rule 56.1. *See Brodin v. Rojas*, No. 11-40179-TSH, 2014 U.S. Dist. LEXIS 39294, at *6-8 (D. Mass. Mar. 25, 2014) (concluding that plaintiff's statement of additional facts did not comply with the intent of Local Rule 56.1, was "replete with improper commentary and innuendo," "often more argumentative than factual and/or assert legal conclusions" and that many facts were "irrelevant or based on inadmissible evidence" and ruling that the Court would not "consider irrelevant, immaterial, redundant or non-supported facts" in its summary judgment determination); *see, e.g., Farrington*, No. 01-274-P-H, 2003 U.S. Dist. LEXIS 1938, at *9-11 (granting motion to strike certain facts in Statement of Material Facts for lack of record citations, certain others as not supported by admissible evidence, and certain others as based on speculation).

## RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS[1/]

86.     On Friday, September 28, 2012, near the end of the day, Defendant Michael Horan entered Plaintiff John Bradley's office at the Plymouth County District attorney's headquarters in Brockton, Massachusetts. Therein, Bradley and Horan spoke alone. (Tr. Bradley Vol. I, p. 170-171; Tr. Horan, p. 59-61).

**DEFENDANTS' RESPONSE:** Undisputed; the cited deposition testimony speaks for itself.

87.     In key respects their recollections of the conversation differ. (Tr. Bradley Vol. I, p.

---

[1/]     Defendants note that Plaintiff did not respond to Defendants' ¶ 86, but incorrectly started his additional facts at 86. Defendants have retained the incorrect numbering here for ease of reference, but Defendants submit that their ¶ 86 should be deemed admitted.

170¬171; Tr. Horan, p. 59-61).

> **DEFENDANTS' RESPONSE:** Undisputed; the cited deposition testimony speaks for itself.

88.     Bradley's version of the conversation is as stated in his deposition. (Tr. Bradley, Vol. I, pp. 170-171).

> **DEFENDANTS' RESPONSE:** Undisputed; the cited deposition testimony speaks for itself.

89.     Horan's version is found in his deposition transcript. (Tr. Horan, p. 59-61).

> **DEFENDANTS' RESPONSE:** Undisputed; the cited deposition testimony speaks for itself.

90.     Both agree that the conversation was brief. Both agree that, during the conversation, Bradley was asked to resign his position as an Assistant District Attorney. (Bradley, p. 170-171; Horan, p. 59-61).

> **DEFENDANTS' RESPONSE:** Undisputed; the cited deposition testimony speaks for itself.

91.     Bradley did not resign. Horan, acting on Cruz's behalf, fired him. (Bradley, pp. 170-171; Horan, p. 59-61).

> **DEFENDANTS' RESPONSE:** Undisputed; the cited deposition testimony speaks for itself.

92.     According to Bradley, Horan never stated exactly why Bradley was being fired. (Bradley, p. 170-171).

> **DEFENDANTS' RESPONSE:** Undisputed; the cited deposition testimony speaks for itself.

93.     Plaintiff will prove that he was fired because he failed to contribute money and other support to Cruz's 2010 political campaign, and that he "blew the whistle" on several issues of malfeasance involving use of government funds to post bail for informants. In so doing, Bradley lost out in a political power play orchestrated by Frank and Bridget Middleton sanctioned and supported by the Defendant Timothy Cruz. Among the aspects of this political power play was a requirement that members of the office support Cruz politically, sport Cruz bumper stickers on their cars, attend political fundraisers, and ultimately contribute cash to Cruz campaigns. Astonishingly, despite low office morale, Cruz collected $61,000 in contributions from employees between 2008 and 2013. (Tr. Bradley Vol. I, 134; Exhibit 15).

> **DEFENDANTS' RESPONSE:** Disputed.  The Court should strike or otherwise disregard this "additional fact" because it violates L.R. 56.1, it is argumentative, it is not supported by the cited deposition testimony, contains inappropriate argument and innuendo, and does not raise a genuine issue of material fact relevant to summary judgment.

## CORE "FAILURE TO CONTRIBUTE FACTS"

94.     The evidence that Bradley was fired for "failure to contribute" is circumstantial. It boils down to seven factual "bullet points" of information. These are listed below. Each is then supplemented by background or foundation facts.

> **DEFENDANTS' RESPONSE:** The Court should strike or otherwise disregard this "additional fact" because it violates L.R. 56.1, it is argumentative, and does not cite to the summary judgment record.

95.     First, Mike Horan told John Bradley repeatedly that Cruz was upset that Bradley sat out the election, and that Bradley was expected to contribute. See, (§ I, infra).

**DEFENDANTS' RESPONSE:** The Court should strike or otherwise disregard this "additional fact" because it violates L.R. 56.1, it is argumentative, and does not cite to the summary judgment record.

96.     Second, Mike Horan also told a high ranking Assistant District Attorney named Karen O'Sullivan she was expected to contribute to Cruz's campaign, and would likely be punished for not so doing. See, (§ II, infra).

**DEFENDANTS' RESPONSE:** The Court should strike or otherwise disregard this "additional fact" because it violates L.R. 56.1, it is argumentative, and does not cite to the summary judgment record.

97.     Third, Bradley was used as an instrumentality of retaliation himself when he was forced to transfer an employee for failing to contribute to the campaign at the behest of Cruz. See, (§ III, infra).

**DEFENDANTS' RESPONSE:** The Court should strike or otherwise disregard this "additional fact" because it violates L.R. 56.1, it is argumentative, and does not cite to the summary judgment record.

98.     Fourth, there is a "smoking gun document." Referring to the political campaign of 2010, it castigates Bradley and O'Sullivan for "sitting out" and "doing nothing." "It is well known that Bradley and O'Sullivan 'sat out' last year." See, (§IV, infra).

**DEFENDANTS' RESPONSE:** The Court should strike or otherwise disregard this "additional fact" because it violates L.R. 56.1, it is argumentative, and does not cite to the summary judgment record.

99.     Fifth, Michael O Connell filed an affidavit demonstrating that Horan was concerned about political contributions as far back as 2003. See, (§V, infra).

**DEFENDANTS' RESPONSE:** The Court should strike or otherwise disregard this "additional fact" because it violates L.R. 56.1, it is argumentative, and does not cite to the summary judgment record.

99.     Sixth, a woman named Mary Glavin refutes claims made in Defendant's L.R. 56.1 filing and to the contrary openly acknowledges the "pay to play' culture within the office. See, (§VI, infra).

**DEFENDANTS' RESPONSE:** The Court should strike or otherwise disregard this "additional fact" because it violates L.R. 56.1, it is argumentative, and does not cite to the summary judgment record.

100.     Seventh, the Defendants endeavored to marginalize Bradley's participation in the office beginning in 2010, effectively freezing him out. See, (§ VII, infra).

**DEFENDANTS' RESPONSE:** The Court should strike or otherwise disregard this "additional fact" because it violates L.R. 56.1, it is argumentative, and does not cite to the summary judgment record.

101.     Additionally, the evidence supporting Defendants suggested reasons for the termination is pre-textual and not credible. See (Plaintiff's Additional Facts, "The Reasons Proffered for Termination Are Pretextual," pp. 21-25, infra).

**DEFENDANTS' RESPONSE:** The Court should strike or otherwise disregard this "additional fact" because it violates L.R. 56.1, it is argumentative, and does not cite to the summary judgment record.

## HORAN STATEMENTS TO BRADLEY

102.     Bradley testified that Horan told him repeatedly that his job was at risk because of unwillingness to contribute to Cruz campaign:

Q. Yes, sir. What I'm asking you specifically, the basis of your belief that you no longer having the district court responsibilities at the Plymouth County District Attorney's Office was due to your decision not to participate in Timothy Cruz's election activities.

A. Michael Horan had told me several times that Frank and Bridget Middleton had talked to Timothy Cruz about my not participating in the campaign and trying to persuade Mr. Cruz to fire me. (Tr. Bradley Vol. I, p. 42).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

### HORAN STATEMENTS TO KAREN O' SULLIVAN

103.     Karen O'Sullivan is a highly accomplished career prosecutor with a stellar professional reputation. Bradley signed the complaint which makes the allegation plain as day. See  (Exhibit 1, pp. 1-2; Tr. O'Sullivan, p. 73).

**DEFENDANTS' RESPONSE:** Undisputed.  This "additional fact" does not raise a genuine issue of material fact relevant to summary judgment.

104.     Today she serves as the First Assistant District Attorney in Bristol County. As such she is responsible for the day to day functioning of the office, and carries a load of major homicide cases. (Tr. O'Sullivan, p. 73).

**DEFENDANTS' RESPONSE:** Undisputed.  This "additional fact" does not raise a genuine issue of material fact relevant to summary judgment.

105.     O'Sullivan had been a rising star in Plymouth. She left the office under circumstances that easily could be construed as "constructive termination." O'Sullivan signed an affidavit which was filed in court with Bradley's complaint. The affidavit is attached hereto and incorporated herein. (Exhibit 1, pp. 1-2).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization. The cited document speaks for itself. Nonetheless, this "additional fact" does not raise a genuine issue of material fact relevant to summary judgment.

106.     O' Sullivan testified that Horan had repeatedly emphasized political contribution in conversations. She stated: "Mike Horan told me that my salary increase or lack of salary increases had to do with my failure to contribute to Tim Cruz's campaign." (Tr. O'Sullivan, p. 39).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization. The cited deposition testimony speaks for itself. Nonetheless, this "additional fact" does not raise a genuine issue of material fact relevant to summary judgment.

107.     Toward the end of the depositions, O'Sullivan was asked whether she understood the significance of her allegations. The entire colloquy is reprinted below:

BY MR. COHEN:

Q.·     So going back to the conversation briefly that you had with Mike Horan in which he relayed to you that your compensation was going to be adversely affected by your failure to contribute significantly to the political campaign of Timothy Cruz -- okay?

Q.     So you understand that if that were, in fact, the case, that is, that your compensation was being adversely affected by your failure to contribute, that would be a state ethic violation. Is that right?

A.     Yes.

Q.     And that you also understood that Mike Horan, who is now your now boss, was relaying to you that the leadership of the Plymouth County District Attorney's Office, which Mike Horan was a part of, was adversely affecting your compensation based on your failure to contribute. Is that right?
A.     Yes.

Q.     So you have your then boss Mike Horan, part of the leadership team at Plymouth County District Attorney's Office, allegedly telling you that he and the others had a conversation in which it was determined that your compensation was going to be adversely affected by your failure to contribute politically. Is that right?

A.    Yes. (Tr. O Sullivan, pp. 167-168).

**DEFENDANTS' RESPONSE:** Undisputed to the extent the cited deposition testimony speaks for itself. Nonetheless, this "additional fact" does not raise a genuine issue of material fact relevant to summary judgment.

## BRADLEY IS ORDERED TO TRANSFER RICK LINEHAN BECAUSE LINEHAN DID NOT CONTRIBUTE

108.    Bradley had been ordered to move an employee named Richard Linehan to a less desirable location as punishment for failure to contribute. Bradley was offended by this request but he followed orders and did what he was told. Bradley revealed this to Karen O Sullivan. (Tr. Bradley Vol. I, pp 45-46; Tr. O'Sullivan, pp. 164-165).

**DEFENDANTS' RESPONSE:** Defendants' dispute Plaintiff's additional fact and refer the Court to Mr. Rick Linehan's Affidavit.[2]

109.    At his deposition he recalled the matter:

Q.    Okay. What's the basis, Mr. Bradley, of your belief that individual contributions by employees of the District Attorney's Office, such as yourself, were important to Tim Cruz?

A. Well, I was told on many occasions by Mr. Horan that they were important to Mr. Cruz. I knew that decisions were made based on political contributions such as who would get raises and how big the raises would be. And I had been told in one instance to move a district court prosecutor to an outlying court far from his home because he hadn't been doing enough politically.

Q.    And which attorney was this?

A.    Rick Linehan.

Q.    Can you spell that last name for me?

---

[2]    Attached as Ex. A to Defendants' Reply to Plaintiff's Opposition.

A. L–I-N-E-H-A-N

(Tr. Bradley Vol. I, pp. 45-46).

**DEFENDANTS' RESPONSE:** Defendants' dispute Plaintiff's additional fact and refer the Court to Mr. Rick Linehan's Affidavit.

## THE SMOKING GUN MEMORANDUM

110.    Attached as "Exhibit 3" is a memorandum which Cruz kept in his desk.

**DEFENDANTS' RESPONSE:** The Court should strike or otherwise disregard this "additional fact" because it violates L.R. 56.1 and it does not cite to the summary judgment record.

111.    It is the same document referred to in Defendant's submission per L.R. 56.1 ¶ 64.

**DEFENDANTS' RESPONSE:** The Court should strike or otherwise disregard this "additional fact" because it violates L.R. 56.1 and it does not cite to the summary judgment record.

112.    The document was drafted by Bridget Middleton in December of 2010, less than two months after the election. (Tr. B. Middleton, p. 67).

**DEFENDANTS' RESPONSE:** Undisputed to the extent the deposition testimony speaks for itself.

113.    Among phrases utilized in the memorandum are the following: "JB and KO made a personal determination to do nothing for Tim because they don't like how the office is run." This statement means that JB and KO (John Bradley and Karen O'Sullivan) failed to contribute to Cruz's political campaign. (Exhibit 3, p. 3; Tr. B. Middleton, pp. 63-64).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the deposition testimony and document speak for themselves.  Moreover, this alleged

additional fact contains inappropriate argument and innuendo, which should be

disregarded.

114.     The memorandum goes on to state: "Everyone knew that JB did not help and it

sent a strong message to the staff." This refers to the totality of both not contributing money and

not engaging in the political dirty work. (Exhibit 3, p. 3; Tr. B. Middleton, pp. 63-64).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited

deposition testimony and document speak for themselves.  Moreover, this alleged

additional fact contains inappropriate argument and innuendo, which should be

disregarded.

115.     It also acknowledges Bradley's popularity. The clear message is "If we let him get

away with not contributing others will stop." (Exhibit 3, 1-3; Tr. B. Middleton, pp. 63-64).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited

deposition testimony and document speak for themselves.  The Court should strike or

otherwise disregard this "alleged fact" because it contains inappropriate argument and

innuendo.

116.     The Defendants take position that that attached memorandum is not a smoking

gun. (See Defendant's L.R. 56.1, ¶64). They say it refers only to Bradley and Karen O'Sullivan

sitting out in the hall at a staff meeting. This is an incorrect reading of the euphemistic language.

(Tr. B. Middleton, pp. 63-64).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited

deposition testimony speaks for itself.

117.     The writer of the document (Bridget Middleton) acknowledged that it referred to

the political campaign. (Tr. B. Middleton, pp. 63-64).

Q. So you asked me about the third page. A. Okay.

Q. If you look at that phrase there --

A. Yes.

Q. It says, "KO and JB purposely sat out." Do you see that?

A. It is well-known that -- it reads, "It is well-known that JB and KO sat out purposely." Did this not send a positive message to the rest of the staff?

Q. Yes.

A. Yes.

Q. What does that phrase "sat out" mean?

A. That is what was said to me.

Q. But what did it mean?

A. I am not sure what you -- I am not sure what you mean.

Q. I am asking you, you said you typed it, right?

A. Right.

Q. Your intention was to give that document to Mr. Cruz?

A. I did give it to him.

Q. What did you mean... sat out the campaign?

A. That they were referring to the campaign in this, yes.

Q. But what did it mean?

A. What it meant was, to me -- you are asking my opinion of what it meant?

Q. Sure.

A. This is the words that were used, but I think what was being conveyed to me is that John and Karen, I want to say more so John, let it be known to the staff that he did not support Tim to the people, particularly to the people that he supervised.

Q. Exhibit W3 --

(Tr. B. Middleton, pp. 63-64).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

## HORAN STATEMENTS TO MIKE O'CONNELL

118. Michael O'Connell was a career prosecutor with a stellar professional reputation. See (Exhibit 2, p. 1).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited document speaks for itself.

119. At the inception of the case, he submitted a signed affidavit. The affidavit is attached hereto and incorporated herein. O'Connell stated that back in 2003; he attended a meeting with Horan to discuss employee compensation. Horan made statements linking employee compensation with campaign contributions. This made O'Connell uncomfortable. (Exhibit 2, p. 1).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited document speaks for itself.

120. In Defendant's L.R. 56.1, ¶60, they cite a woman named Mary Glavin as an example of a person who refused to contribute to the campaigns but was treated evenly and fairly.

**DEFENDANTS' RESPONSE:** The Court should strike or otherwise disregard this "additional fact" because violates L.R. 56.1, it does not cite to the summary judgment record, and does not raise an issue of material fact relevant to summary judgment.

121. Attached hereto is an affidavit executed by Ms. Glavin; the same Ms. Glavin referred to in Defendant's L.R. 56.1 statement. See (Exhibit 4, p. 1-2).

**DEFENDANTS' RESPONSE:** The Court should strike or otherwise disregard this "additional fact" because violates L.R. 56.1, it does not cite to the summary judgment record, and does not raise an issue of material fact relevant to summary judgment.

122.     She states that the "culture" of the office requires contributions. (Exhibit 4, p. 1).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the document speaks for itself.

123.     Glavin asserts that she was not treated fairly as a result of her decision not to contribute or participate in Cruz's political campaign. (Exhibit 4, pp. 1-2).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the document speaks for itself.

<u>BRADLEY WAS FROZEN OUT OF THE OFFICE</u>

124.     Shortly after the 2010 election, Bradley's duties were marginalized and he was cut out of the loop within the office. (Tr. Bradley Vol. I, pp. 87-89, 120).

**DEFENDANTS' RESPONSE:** Defendants' dispute Plaintiff's characterization; the deposition testimony speaks for itself.

125.     Prior to 2010, Superior Court prosecutors would consult with Bradley on issues arising in their cases. (Tr. Bradley Vol. I, p. 122-123).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the deposition testimony speaks for itself.

126.     Bradley was advised that he would be utilized in this capacity in 2003. (Tr. Bradley Vol. I, p. 124-125).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the deposition testimony speaks for itself.

127.	Within months of the 2010 election, the Superior Court prosecutors were informed that they could no longer consult with Bradley. (Tr. Bradley Vol. I, p.121).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the deposition testimony speaks for itself.

128.	In January of 2012, Bradley was discharged from his position as District Court Chief. (Tr. Bradley Vol. I, 86.).

**DEFENDANTS' RESPONSE:** Undisputed.

129.	The removal of Bradley's duty to consult with the Superior Court prosecutors regarding dispositions and issues in their respective cases commenced the process of marginalizing Bradley's participation in the office, including his removal as District Court Chief, and eventually culminated with his termination on September 28, 2012. (Tr. Bradley Vol. I, pp. 86-89, 120-125).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the deposition testimony speaks for itself.

<u>CORE "WHISTLE BLOWER FACTS"</u>

130.	In 2009, at the behest of Horan, Bradley met privately with Cruz to express concern about what they perceived to be problematic issues in the office. Chief among them was Middleton's malfeasance as a supervisor of the Superior Court prosecutors. At that meeting, Bradley broached, for the first time, the issue of what he thought was a reckless manner in which cooperating witnesses in homicide cases were being dealt with. (Exhibit 18, p. 1, ¶¶ 3-4).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization. Mr. Horan's testimony speaks for itself. Moreover, this "alleged fact" lacks record support.

131.	Middleton was in the office less than fifty percent of the time during work hours-

he was inaccessible to the very people he was ostensibly supervising. Moreover, Bradley was starting to receive complaints that Middleton was making troubling decisions concerning cooperating witnesses in homicide cases. (Exhibit 18, p. 2, ¶ 5).

> **DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization and are unable to verify as this "alleged fact" is not supported with citation to the summary judgment record.

132. Bradley relayed these concerns to Cruz in their 2009 meeting. Cruz informed Bradley that he would look into them. Bradley later learned that not only did Cruz do nothing about the issues Bradley had raised, but Cruz also told Middleton that Bradley had complained to him. (Exhibit 18, p. 2, ¶ 6).

> **DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization and are unable to verify as this "alleged fact" is not supported with citation to the summary judgment record.

133. In late November or early December of 2010, Bradley learned from another prosecutor in the office that Middleton had authorized state police detective assigned to the office to post bail for a defendant ('Cooperator 1') in Bristol County. (Exhibit 18, p. 2, ¶ 7).

> **DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization and are unable to verify as this "alleged fact" is not supported with citation to the summary judgment record.

134. On information and belief, this process is illegal and constitutes a fraud upon the court and public. The legal reasons for this information and belief will be argued in the memorandum of law. (Exhibit 18, p. 2, ¶ 8).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization and are unable to verify as this "alleged fact" is not supported with citation to the summary judgment record. The Court should strike this "alleged fact" or otherwise disregarded because it is based "on information and belief".

135.     Bradley voiced his concern about Cooperator 1 to Horan, who agreed that the issue was deeply troubling, and promised to discuss it with Cruz. A few days later, Horan told Bradley that he had raised the issue with Cruz, and that Cruz had no problem at all with the decision to post bail for Cooperator 1. (Exhibit 18, p. 2, ¶ 9).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization and are unable to verify as this "alleged fact" is not supported with citation to the summary judgment record.

136.     Bradley later learned that the state police detective had threatened to have the co-operator held without bail if he did not cooperate with them; only after he agreed to cooperate was his bail set at an amount of $350. (Exhibit 18, p. 2, ¶ 10).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization and are unable to verify as this "alleged fact" is not supported with citation to the summary judgment record.

137.     Cruz would subsequently testify falsely at his deposition that this particular cooperator's bail had already been set at the time he agreed to cooperate. (Tr. Cruz, p. 281; (Exhibit 18, p. 2, ¶ 11).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization D.A. Cruz's testimony speaks for itself.

138.     Also in 2010, a second cooperator ("Cooperator 2") became a topic of great

controversy within the office. Bradley learned of this from other prosecutors who had cases in which Cooperator 2 was a witness. They complained to Bradley because they felt Cooperator 2 was such a liability that he could kill someone after receiving charge concessions from Middleton. (Exhibit 18, p. 3, ¶ 15).

> **DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization and are unable to verify as this "alleged fact" is not supported with citation to the summary judgment record.

139.    Bradley told Horan about the concerns shared by several prosecutors in the office regarding the second cooperator. Horan told Bradley that he had already been made aware of the issue, and would speak to Cruz about it. Days later, Horan came into Bradley's office and told him that Cruz had complete faith in Middleton's decisions. (Exhibit 18, p. 3, ¶ 16).

> **DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization and are unable to verify as this "alleged fact" is not supported with citation to the summary judgment record.

140.    In January 2011, Cruz, aware that several superior court prosecutors, along with Horan and Bradley, were disgruntled at Middleton's decision making, held a mandatory staff meeting. At this meeting, he read from a speech that had been written for him by Middleton's wife. He railed at those who disagreed and told them that if they didn't like his policies, "there's the door." Cruz admonished them all that Middleton was merely carrying out his polices. (Exhibit 18, p. 3, ¶ 19).

> **DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization and are unable to verify as this "alleged fact" is not supported with citation to the summary judgment record.

141.     Bradley received yet another complaint about a third cooperator ("Cooperator 3") sometime in late 2011. This prosecutor complained that she had grave reservations about both this third cooperator's credibility as a witness and the fact that he was on the street as a result of another agreement authorized by Middleton. (Exhibit 18, p. 4, ¶ 23).

> **DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization and are unable to verify as this "alleged fact" is not supported with citation to the summary judgment record.

142.     Bradley told this prosecutor that he had by then voiced his concerns on this issue several times to Horan and Cruz, and that Cruz had told Horan that he had complete faith in whatever Middleton decided. Nevertheless, Bradley told her the prosecutor that he would talk to Horan about Cooperator 3. (Exhibit 18, p. 4, ¶ 24).

> **DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization and are unable to verify as this "alleged fact" is not supported with citation to the summary judgment record.

143.     Yet again, Bradley raised the cooperating witness issue with Horan. Once again, Horan promised to speak to Cruz about Cooperator 3. He later told Bradley that Cruz told him he was "done" discussing issues concerning cooperating witnesses. (Exhibit 18, p. 4, ¶ 26).

> **DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization and are unable to verify as this "alleged fact" is not supported with citation to the summary judgment record.

144.     Bradley believes and asserts that his multiple complaints on this issue, which were critically important to their prosecutorial obligation to maintain public safety, was a significant factor in his termination and that Cruz himself foreshadowed as much in his 2011

speech to the Superior Court Staff. (Exhibit 18, p. 5, ¶¶ 31-32).

> **DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization and are unable to verify as this "alleged fact" is not supported with citation to the summary judgment record.

145.     In late 2005 or early 2006, Bradley was asked by Cruz and Horan to become the supervisor of the District Courts. This involved the supervision of all four district courts in the county and approximately 20-25 new or relatively new prosecutors. (Exhibit 18, p. 5, ¶ 33).

> **DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization and are unable to verify as this "alleged fact" is not supported with citation to the summary judgment record.

146.     Bradley held this role until January 2012, when Cruz sent out an office-wide email explaining that Bradley was going to focus on other work and that Tim Shyne would be taking over as District Court supervisor. Cruz's email said nothing about the ostensibly mutual agreement made in November 2011 that Bradley had agreed to resign following the completion of his last homicide trial. (Exhibit 18, p. 5, ¶ 34).

> **DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization and are unable to verify as this "alleged fact" is not supported with citation to the summary judgment record.

## THE REASONS PROFFERED FOR TERMINATION ARE PRETEXTUAL

147.     Cruz testified that he decided to terminate Bradley as a result of Bradley's November 2011 email in response to Cruz's directive to stop speaking to the media concerning OUI's in the District Court. (Tr. Cruz, pp. 149, 234).

> **DEFENDANTS' RESPONSE:** Undisputed.

148.     He stated that he decided "pretty much the moment that [he] got the 'I'm not your child' email." (Tr. Cruz, pp. 149, 234).

**DEFENDANTS' RESPONSE:** Undisputed.

149.     Nonetheless, Bradley was not terminated until September 28, 2012, nearly ten (10) months later. (Tr. Bradley, Vol I. p. 169-170).

**DEFENDANTS' RESPONSE:** Undisputed.

150.     On October 16, 2012, more than two weeks after Bradley was terminated, Cruz asked Kendra Salvatore to find and forward emails to him including the 'I am not your child' email identified as Defendant's "Exhibit 8," and an email entitled "Memo from Tim," that identifies Bradley's job duties as of January 2011. (Tr. Salvatore, p. 66).

**DEFENDANTS' RESPONSE:** Undisputed; this "additional fact" does not raise a genuine issue of material fact relevant to summary judgment.

151.     Cruz also claims that he decided to terminate Bradley's employment when Bradley did not resign as he allegedly agreed. (Tr. Cruz, pp. 150-152, 398).

**DEFENDANTS' RESPONSE:** Undisputed.

152.     On November 21, 2011, Cruz and Bradley had a meeting regarding the earlier email exchange. (Tr. Cruz, pp. 150, 168).

**DEFENDANTS' RESPONSE:** Undisputed.

153.     According to Cruz, Bradley was upset during the meeting, unapologetic, and hostile. (Tr. Cruz, pp. 168-169).

**DEFENDANTS' RESPONSE:** Undisputed.

154.     Nonetheless, Cruz testified that Bradley agreed to resign after the completion of

two homicide trials. (Tr. Cruz, pp. 168-169).

**DEFENDANTS' RESPONSE:** Undisputed.

155.     Cruz claims that Bradley agreed to resign without discussing future employment, severance, his pension, or "any such things" although his pension was set to vest in approximately one year. (Tr. Cruz, pp. 168-172).

**DEFENDANTS' RESPONSE:** Undisputed.

156.     Cruz failed to ever memorialize Bradley's alleged agreement to resign in writing. (Tr. Cruz, p. 68).

**DEFENDANTS' RESPONSE:** Undisputed. Nonetheless, this "additional fact" does not raise an issue of material fact relevant to summary judgment.

157.     Pursuant to M.G.L. c. 149, §52C, an employer is required to keep personnel records. Such records "shall include" among other things "employee performance evaluations… written warnings of substandard performance; lists of probationary periods; waivers signed by the employee, copies of dated termination notices; [and] any other documents relating to disciplinary action." (M.G.L. c. 149, §52C- Exhibit 16).

**DEFENDANTS' RESPONSE:** Undisputed to the extent the statutory language speaks for itself. Nonetheless, this "additional fact" does not raise an issue of material fact relevant to summary judgment.

158.     Cruz failed to include any notation of Bradley's alleged agreement to resign or pending termination in Bradley's personnel file. (Bradley Personnel File).

**DEFENDANTS' RESPONSE:** Undisputed. Nonetheless, this "additional fact" does not raise an issue of material fact relevant to summary judgment.

159.     Despite a litany of alleged transgressions by Bradley, his personnel file is devoid of

any documents relating to termination, substandard performance, or disciplinary action. (Tr. Cruz, p. 61-70; Tr. Cruz, p. 314; Bradley Personnel File)[3/]

**DEFENDANTS' RESPONSE:** Undisputed. Nonetheless, this "additional fact" does not raise an issue of material fact relevant to summary judgment.

160.    Cruz did not inform Horan of Bradley's alleged agreement to resign until September 28, 2012. (Tr. Cruz, p. 236).

**DEFENDANTS' RESPONSE:** Undisputed; this "additional fact" does not raise an issue of material fact relevant to summary judgment.

161.    When confronted with this fact, Cruz changed his story, claiming that he informed Horan of Bradley's alleged resignation in January of 2012. (Tr. Cruz, p. 247).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

162.    Cruz changed his story concerning Bradley's alleged agreement to resign a second time, claiming the he informed Horan soon after the conversation. (Tr. Cruz, p. 397).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

163.    Cruz did not inform Frank Middleton of Bradley's alleged agreement to resign for a month or more. (Tr. Cruz, p. 240).

**DEFENDANTS' RESPONSE:** Undisputed.

164.    Cruz later changed his story, claiming that he informed Horan of Bradley's

---

[3/]    Undersigned counsel does not believe it is appropriate to paper the record with entire personnel file to prove the absence of a document at this stage. Nonetheless, a copy of John Bradley's personnel file can be made available if the Defendants do not stipulate.

alleged agreement to resign within a week. (Tr. Cruz, p. 397).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

165.    Cruz did not inform his management consultant, Gary Kilzer, of Bradley's alleged agreement to resign. In fact, Cruz testified that the decision to terminate Bradley had not yet been made. (Tr. Cruz, p. 57).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

166.    Cruz never informed Sharon Donatelle, Christine Kiggen, or Tom Flanagan of Bradley's alleged agreement to resign. In fact, they were shocked to hear that Bradley was fired. (Tr. Donatelle, p. 40; Tr. Kiggen, p. 8; Tr. Flanagan, p. 78).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the deposition testimony speaks for itself.

167.    Despite a culture of "rumor, scuttlebutt, and surmise that floats around the office," none of the Superior Court staff, O'Sullivan, Donatelle, Kiggen, or Flanagan, had any idea that Bradley had allegedly resigned. (Tr. Cruz, 336; Tr. Donatelle, p. 40; Tr. Kiggen, p. 8; Tr. Flanagan, p. 78).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

168.    When Horan asked for Bradley's resignation on September 28, 2012, Horan testified that Bradley seemed shocked. (Tr. Horan, p. 160).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

169.     Cruz was unsure whether the Plymouth County District Attorney's Office operates under a progressive disciplinary policy. (Tr. Cruz, p. 218-219).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

170.     Gary Kilzer testified that insubordination most often leads to the employee being placed on a performance improvement plan, where if the employee's "performance doesn't improve, remedial action can be taken, up to and including, termination." (Tr. Kilzer, pp. 64-65).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

171.     Bradley was not placed on a performance improvement plan. (Tr. Cruz, p. 61-70; Exhibit 17).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

172.     Bradley's conduct did not violate any written policy of the Plymouth county District Attorney's Office. (Tr. Cruz, p. 217).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

173.     Kilzer testified that there is some behavior that is too egregious to correct with a performance improvement plan and requires termination. (Tr. Kilzer, pp. 79-80).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

174.     Kilzer testified that termination is required where, for example: "somebody gets drunk and does something crazy at a company event or a blatant sexual harassment... or things

like that." (Tr. Kilzer, p. 80).

> **DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

175.    Frank and his wife, Bridget Middleton, consistently contributed to Cruz's campaign. (Tr. B. Middleton, p. 48; Tr. F. Middleton, p. 91).

> **DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

176.    Frank Middleton's father is a major real estate broker in Plymouth County who supported Cruz. (Tr. Cruz, p. 124, 141).

> **DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the deposition testimony speaks for itself. Nonetheless, this "additional fact" does not raise a genuine issue of material fact relevant to summary judgment.

177.    Cruz witnessed Frank Middleton intoxicated at an MDAA conference and believed that Middleton was voicing his displeasure to District Attorney Joseph Early about hiring Bradley. (Tr. Cruz, pp. 188-189, 281).

> **DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

178.    Shortly after the MDAA conference very serious allegations were brought to Cruz's attention.

> **DEFENDANTS' RESPONSE:** Undisputed exclusively for the purposes of summary judgment.

179.    These very serious allegations concerned an employee who strongly supported Cruz.

**DEFENDANTS' RESPONSE:** Undisputed exclusively for the purposes of summary judgment.

180.     The employee was not investigated or questioned about the matter for seven to eight months after Cruz learned of the allegations.

**DEFENDANTS' RESPONSE:** Undisputed exclusively for the purposes of summary judgment.

181.     Cruz retained Attorney Walter Sullivan to investigate the matter, but never read the report that Sullivan prepared as a result of that very investigation; the report is sitting in an envelope in Cruz's house. (Tr. Cruz, p. 306-308).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

182.     In April of 2015 Frank Middleton was asked to resign. (Tr. Cruz, p. 298).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

183.     According to both Frank and Bridget Middleton, Cruz asked Frank to resign because he believed that Frank had become a political liability due to Bradley's lawsuit. (Tr. F. Middleton, p. 44; Tr. B. Middleton, p. 30).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

184.     Cruz only asked Middleton to resign once he realized that Middleton's continued employment would impact Cruz's political future. (Tr. B. Middleton, p. 27-30).

**DEFENDANTS' RESPONSE:** Defendants dispute Plaintiff's characterization; the cited deposition testimony speaks for itself.

## CONCLUSION

Because portions of Plaintiff's additional facts violate Local Rule 56.1, do not contain "page references to affidavits, depositions and other documentation," and instead include advocacy and argument Defendants respectfully request that the Court strike or otherwise disregard the following additional facts: ¶¶ 93-101, 110, 111, 115, 120, 121, and 134.

Respectfully Submitted,

TIMOTHY J. CRUZ, MICHAEL HORAN, FRANK J. MIDDLETON, and the OFFICE OF THE DISTRICT ATTORNEY FOR PLYMOUTH COUNTY

By their attorney,

MAURA HEALEY
ATTORNEY GENERAL

By: */s/ Bret A. Cohen*
Bret A. Cohen
Special Assistant Attorney General
BBO # 637830
Robert Sheridan
Special Assistant Attorney General
BBO # 673829
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000
BCohen@mintz.com
RSheridan@mintz.com

*Attorneys for Defendants Timothy J. Cruz, Michael Horan, Frank J. Middleton, and the Office of the District Attorney for Plymouth County*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system on June 14, 2016 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Bret A. Cohen*
Bret A. Cohen

47990765v.1